Harold Birns, J.
The following is the court’s memorandum in connection with the submission by the defendants of certain subpoenas duces tecum directed to the Mayor and the Commissioner of Correction of the City of New York. The said subpoenas call for the production at trial of certain enumerated records bearing upon conditions at the Manhattan House of Detention from January 1,1970. The said items sought embrace such matters as the population of the Tombs, the number of suicides, complaints received during said period concerning alleged physical force or ‘ ‘ brutality ’ ’ exercised by prison officials on inmates, and the personnel folders of the various guards who will presumably be called as witnesses in the trial of the indictments against Curtis Brown, Ricardo De Leon and Nathaniel Ragsdale.
In addition, this memorandum is also addressed to the defense of ‘ ‘ justification ’ ’ proffered by said defendants in connection with the said indictments.
The defendants are charged jointly in one indictment with multiple counts of the crimes of kidnapping in the first degree, reckless endangerment in the first degree, coercion in the first degree, riot in the first degree, and obstructing governmental administration. In separate indictments consolidated for trial with the joint indictment, the defendants individually are charged with the crimes of possession of dangerous weapons, instruments and appliances, and promoting prison contraband *226 in the first degree. The acts alleged as crimes in the indictments occurred during the disturbances in the Manhattan House of Detention on October 2 to 5, 1970.
Section 35.00 of the Penal Law provides: “ In any prosecution for an offense, justification, as defined in Sections 35.05 through 35.30, is a defense.”
Justification, in terms of self-defense and other limited areas, is recognized in other sections of the Penal Law.[1] (§§ 35.10-35.40.) However, the defense of justification in general terms has never before been incorporated in the statutory law of New York, and its inclusion in our revised Penal Law is therefore an innovation.
The defendants seek to avail themselves of this defense. Their application, if granted, would require the People to disprove the defendants’ assertion of justification beyond a reasonable doubt (People v. Riordan, 117 N. Y. 71, 74-75).
During the voir dire of the prospective jurors in the trial of the above indictments, the defendants questioned members of the jury regarding their respective ability to follow the instructions of the court, if the court charged the jury on the issue of justification. Defendants had stated to the jurors that the defense of justification would be raised at the trial.
In addition, the subpoena duces tecum above mentioned has been sought by the defendants in connection with this proposed defense.
Enough has been gleaned from the voir dire to demonstrate that the People intend to prove, in connection with the indictments, that the defendants captured a number of prison guards and certain civilians working in the Tombs, held them as hostages, and threatened to seriously assault and kill them during the period mentioned. The defendants intend to prove that this action was taken by the defendants in protest against deplorable prison conditions, and that the defendants sought in that fashion to bring their grievances to the attention of the authorities and the public (see List of Grievances, New York Times, Aug. 11, 1970).
In arguing for the issuance of said subpoenas, the defendants stated that in the course of this trial they intended to prove, as justification for the crimes charged, the deplorable conditions heretofore referred to, the repeated demands by inmates of the Tombs prison for relief, the promises by persons in authority *227 to correct said conditions, and the failure to achieve relief therefrom.
In effect, the defendants have asserted that the acts alleged as crimes in the indictments, even if proven heyond a reasonable doubt, as required by law, were not criminal because the defendants’ acts were justified in view of all the circumstances outlined above. Hence, claim the defendants, they are entitled to claim justification as a defense to the acts alleged as crimes in the indictments.
Section 35.05 of the Penal Law defines justification generally. An analysis of this section will be made in connection with the applications sought by the defendants. At the outset it must be observed that section 35.05 provides in its final sentence: ‘ ‘ Whenever evidence relating to the defense of justification under this subdivision is offered by the defendant, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a defense.” Hence, this court at this time considers it appropriate to rule upon the said applications now, in order that counsel may properly make their openings within the limitations afforded by law.
Upon consideration of all the arguments presented, this court, as a matter of law, rejects the defense of justification as being inapplicable in every respect to the indictments at bar. The following reasons support this conclusion:
Section 35.05, insofar as it is applicable to this case, reads as follows:
‘ ‘ Unless otherwise limited by the ensuing provisions of this article defining justifiable use of physical force, conduct which would otherwise constitute an offense is justifiable and not criminal when: * * *
“ 2. Such conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fauft of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.”
It will be observed that this section is composed of two separate elements which must be found to exist before ‘ ‘ conduct which would otherwise constitute an offense ” can be found to be justifiable and not criminal.
First: Such conduct must be found to be necessary as an emergency measure to avoid an imminent public or private *228 injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor; and
Second: The injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoidiing the injury sought to be prevented by the statute defining the offense in issue.
Section 35.05 is derived from the Model Penal Code adopted by the American Law Institute (see Denzer and McQuillan, Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 39, pp. 56-57).
Section 3.02 of that code adopted the view ‘1 that a principle of necessity, properly conceived, affords a general justification for conduct that otherwise would constitute an offense; and that such a qualification [i.e., necessity] is essential to the rationality and justice of all penal prohibitions ” (American Law Institute Model Penal Code, Tentative Draft No. 8, p. 5; see illustrations discussed pp. 5-10) (italics added).
“ Necessity ” was viewed in terms of the avoidance of an evil greater than the evil sought to be avoided by the law defining the offense charged (Model Penal Code, supra, p. 5; see pp. 5-10). In other words, through the proposed introduction of the defense of justification, the Model Penal Code sought to incorporate a “ choice of evils ” doctrine which would provide a legal excuse for any wrongdoer who was confronted with alternatives in engaging in proscribed criminal behavior.
Examples of cases illustrating the “ choice of evils ” are legion. At this point there need only be cited the classic case of shipwrecked survivors charged and convicted of murder despite the fact that they killed and ate one of their group to avoid death by starvation (Regina v. Dudley and Stephens, 14 Q. B. D. 273). In formulating a defense of general justification, it was said: “ It is perhaps.unnecessary to add that the need for the formulation is by no means limited to homicide. Property may be destroyed to prevent the spread of a fire. A speed limit may be violated in pursuing a suspected criminal. An ambulance may pass a traffic light. Mountain climbers lost in a storm may take refuge in a house or- may appropriate provisions. A cargo may be jettisoned or an embargo violated to preserve the vessel. An alien may violate a curfew order to reach an air raid shelter. A druggist may dispense a drug without the requisite prescription to alleviate distress in an emergency. A developed legal system must have better ways of dealing with such problems than to refer only to the letter of *229 particular prohibitions, framed without reference to cases of this kind.” (American Law Institute, Model Penal Code, Tentative Draft Ño. 8, p. 9.)
The authors of our present Penal Law, i.e., our revised Penal Law, considered the ramifications of this proposal and questioned the adoption of the American Law Institute proposal as too broad for incorporation in our penal statutes. (See Minutes of Public Hearing, Temporary Commission on Revision of Penal Law and Criminal Code, New York City, Nov. 23-24, 1964. Comments of Commissioner Herbert Wechsler and Hon. N. Richard Hviller, pp. 78-89 and Hon. Bernard Smith, pp. 393-394.)
In the 1964 study bill we find the text of a proposed justification statute (then designated section 6500 [2]) not too dissimilar from our present section 35.05. At the time, the commission staff commented that the section on justification as then proposed referred “ to .rare and highly unusual circumstances ” and gave illustrations to support that contention. For example, the staff cited ‘ ‘ the burning of real property of another to prevent a raging forest fire from spreading into a densely populated community; or forcibly confining a person ill with a highly contagious disease for the purpose of preventing him from going into a city and possibly starting an epidemic.” (See proposed New York Penal Law introduced as a study bill, Senate Int. 3918, Assembly Int. 5376, at the 1964 Legislative Sess., p. 317).
In the Practice Commentary of section 35.05, we now read that ‘ ‘ Subdivision 2 * * * is addressed to an area of technically criminal behavior which virtually no one would consider improper but which has never expressly been declared justifiable either by the statute or case law of New York * * * [and] is designed to cover very unusual situations in which some compelling circumstance or ‘ emergency ’ warrants deviation from the rule that transgression of the criminal law will not be tolerated ” (see Practice Commentary, Denzer and McQuillan, vol. 39, pp. 56-57). (Italics added.)
Illustrations, similar to those found in the 1964 study bill, are supplied to support the suggested narrow application of this section. Emphasizing this suggested application, the Commentary continues: 1 ‘ The phraseology of the provision, tightened by the use of such terms as ‘ urgency ’ and ‘ emergency measure,’ is designed closely to limit its application and to preclude extension beyond the narrow scope intended.”
The history of the statute discloses the intention by the Temporary Commission on Revision of the Penal Law that subdi *230 vision 2 of section 35.05 is to be narrowly construed; that the section is to be applied to areas of ‘1 technically criminal behavior which virtually no one would consider improper.” With this guide, we return to the statute and the application of the defendants now before us.
At the outset, it is noted that the primary requirement of those who claim justification for conduct adopted when confronted with “a choice of evils” is that “such conduct is necessary as an emergency measure to avoid an * * * injury which is about to occur * * * through no fault of the actor,” namely, the person charged with criminal conduct. (Italics added.)
In the application at bar, the defendants have rested their claim of justification upon a history of grievances submitted to the proper authorities which have not been remedied. Nothing has been offered by the defendants to meet the fundamental requirement of this section that the conduct with which they are now charged as crimes was necessary as an emergency measure to avoid an injury about to occur. Nor can it be accepted that the crimes alleged in the indictments can be classified as “ technically criminal behavior which virtually no one would consider improper.”
Nor have the defendants even approached the secondary requirement that “ such conduct is necessary as an emergency measure to avoid a public or private injury * * * which is of such gravity that, according* to ordinary standards of morality, the desirability of avoiding such injury clearly outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.”
Therefore, reliance on this section is unwarranted. Two further points raised by the defendants must be noted:
The defendants have asserted an additional defense, namely, that they were subjected to cruel and unusual punishment (U. S. Const., 8th Arndt.) which they seek to establish at the trial. In the context of this case, and from arguments presented, cruel and unusual punishment refers to the deplorable prison conditions to which the defendants allegedly were subjected. This claim of cruel and unusual punishment is merely a different way of stating the defense of justification.[2]
*231 The defendants also claim that their conduct did not obstruct governmental administration, as charged in the indictment. Defendants argue that this conduct was intended to “ advance ” rather than obstruct governmental administration. They assert that the Manhattan House of Detention was improperly administered during the period in question and prior thereto.
This court holds that whether or not the Manhattan House of Detention was being administered properly, i.e., consonant with accepted standards of prison administration, is immaterial.
The claims of the defendants, upon analysis, have no relevance to the crime of obstructing governmental administration. Section 195.05, defining that offense, reads as follows: “A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act.”
Admittedly, the administration of the Manhattan House of Detention is a governmental function assumed by the City of Hew York (City Charter, ch. 25, §§ 621-626). Defendants’ thesis is that “improper” administration of the Manhattan House of Detention was not a governmental function and therefore the defendants could not be guilty of obstructing governmental administration. This thesis is specious.
If in any way, under this section, a defendant intentionally obstructed, impaired or perverted the administration of law or other function relating to the Manhattan House of Detention, or perverted or attempted to pervert a correction officer or any other public servant from performing an official act by means of intimidation, physical force, interference or by means of any independently unlawful act, this crime is made out, at least prima facie.
Thus, a defendant’s “good” intentions, i.e., to advance rather than obstruct the administration of the Manhattan House of Detention, cannot be accepted as a defense to the charge of obstructing governmental administration, nor can evidence of alleged maladministration of that institution have any rele *232 vaney to that crime.[3] All that the defendants have done by this argument is to raise the defense of justification in a different form.
The crimes set forth in the indictment are crimes of substance. Research has disclosed no case in New York where similar misbehavior charged has been subject to a defense of justification or necessity (cf. State v. Davis, 14 Nev. 439; Dempsey v. United States, 283 F. 2d 934).
There can be no doubt that conditions in penal institutions require reform and that many grievances of prisoners are well founded and should be remedied without delay by appropriate authorities. On the other hand, there is ño legal justification for acts of violence committed, as a means of obtaining social redress, or, in this case, penal reform. The defendants may not then introduce evidence of their grievances or other matter relating to prison conditions requiring corrective action as a general justification for the crimes charged.
The courts of our State may not be used as legislative forums. The power to change appalling conditions found in prisons rests with the legislators, the representatives of the People of this State, and the chief executives of the city and State.
Accordingly, the proffered defense of justification asserted by the defendants with respect to the indictments at bar is denied as a matter of law.
The application for the issuance of subpoenas duces tecum is denied insofar as the items requested relate to the proffered defense of justification.

. This memorandum is not concerned with such limited defenses which may be raised during the trial.

. Parenthetically, it is observed that if cruel and unusual punishment is inflicted upon prisoners, relief is available through the institution of an appropriate lawsuit (See “The Law of the Circuit and All That”, 46 St. John’s L. Rev. 474, i.e., “Procedural Due Process in the Peno-Correctional Law”, pp. 474-493).

. More than 75 years ago a renowned scholar wrote: “It will not excuse one for obstructing an officer in his public duties that the motive was the officer’s personal chastisement” (citing United States v. Keen, 5 Mason 453) “and when a man does the forbidden thing, moved by the intent prohibited, it is of no avail to him that he also intends an ultimate good” (1 Bishop, Criminal Law, §§ 339 and 341). “In fact * * * even proof of a good motive will not save a defendant from conviction” (Perkins, Criminal Law, p. 721). See People ex rel. Hegemam v. Corrigan, 195 N. Y. 1,13: “ One may not commit a crime because he hopes or expects some good will come of it.”