OPINION OF THE COURT
Angelo Mauceri, J.
On June 3, 1979, the defendant participated in a mass demonstration at the Shoreham Nuclear Power Plant owned by the Long Island Lighting Company (LILCO). Police officers and duly appointed employees of LILCO were behind the wire fence which enclosed the plant buildings. A LILCO employee warned the defendant that climbing the fence would be a trespass and he would be arrested by the police officers. The defendant ignored the warning and climbed the fence. He was promptly arrested for the crime of trespass, section 140.10 of the Penal Law, as a misdemeanor.
On the day of trial the District Attorney reduced the charge to simple trespass, a violation of section 140.05 of the Penal Law and a nonjury trial was held by this court.
The defendant admits to the trespass but asks the court to *522 acquit him pursuant to section 35.05 of the Penal Law interposing the defense of justification, or in the alternative, asks that the information be dismissed in the interest of justice.
The court must decide whether justification as defined by the statute and case law applies to this case as the facts existed on June 3, 1979. The People and defense have submitted detailed briefs and have made cogent arguments in support of their respective positions, and the court has deliberated the question extensively.
Justification is a statutory defense and as such it must be strictly construed. Section 35.05 of the Penal Law provides as follows:
"Unless otherwise limited by ensuing provisions of this article defining justifiable use of physical force, conduct which would otherwise constitute an offense is justifiable and not criminal when: * * *
"2. Such conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency óf avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue. The necessity and justifiability of such conduct may not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particulsir class of cases arising thereunder. Whenever evidence relating to the defense of justification under this subdivision is offered by the defendant, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a defense.”
The parties have put forth a number of cases both in New York and in other jurisdictions to support their contentions. The defense cites Hirabayashi v United States (320 US 81) and Korematsu v United States (323 US 214, 216) dealing with the internment of Japanese Americans at the outset of World War II where the court ¡said about the internment that "public necessity may sometimes justify the existence of [this] restriction”. These cases may show the extent that circumstances give birth to justification, but it is the court’s opinion that these cases are not applicable and would not be the law today.
*523 They have also cited other cases which have a direct bearing on the case at hand. In United States v Ashton (24 Fed Cas 873, 874 [No. 14,470]) the court concluded that a crew which refused to sail a ship upon a "bona fide * * * reasonable * * * belief’ that the ship was not seaworthy was justified in their refusal to sail. In United States v Simpson (460 F2d 515), State v Dorsey (118 NH 844), People v Brown (70 Misc 2d 224), State v Kee (398 A2D 384 [Me]), and in other cases on the subject defense, the recurring word and basis of all actions is reasonableness. It is necessary that there is a reasonable belief that an emergency exists; that the action taken by the party is reasonable in light of the facts and circumstances known by the party at the time of his act, and that the harm he seeks to prevent is greater than that which he will commit; and most important there is a reasonable certainty that the condition acted against will be completely stopped or overcome.
The defendant testified that he committed the violation to stop the construction of the nuclear plant because there were defects in construction which would cause the reactor to be unsafe when it went into normal operation although the reactor was not as yet completed. He also states that these defects would have gone undetected and that the reactor when put "on line” could create a nuclear accident.
The defendant had no personal knowledge of any of these defects but relied upon statements made to him by other persons. Of necessity the testimony and exhibits must be directed to the allegations of the defendant as to his knowledge and reasons for committing trespass on June 3, 1979.
The only witness produced at the trial who had spoken to the defendant before June 3, 1979, was Mr. Everett who said he was the defendant’s friend and had relayed to him information concerning what he felt were defects in construction. The other witness was Mr. McCrystal who had never spoken to the defendant, hence his knowledge would not have influenced the defendant’s conduct. Dr. Kaku is a nuclear physicist and was another witness. His testimony was used to buttress the testimony of the two prior witnesses. He clearly stated that if there were cracks in the concrete walls, and if there were improper welding procedures used, that it could cause a nuclear accident at the plant. His testimony is unchallenged, but it is subject to proof that the defects were present.
The first element necessary in the defense of justification is *524 that an emergency existed witihin the knowledge of the defendant. In this regard Mr. Everett’s testimony is critical. Mr. Everett stated that he was ah apprentice carpenter working on the construction of concrete forms into which concrete is poured to fabricate the walls which made up the pedestal for the reactor. He admittedly never worked with concrete and was not an expert on its properties. He testified as to pouring techniques, the length of time that the forms were left on, how tie rods holding the forms together were pulled through the concrete wall when the iforms were removed, and how honeycombs (surface holes) were patched. His testimony of necessity was speculative and not clearly convincing as to whether serious defects existed in the walls. His statement that surface honeycombs were patched while the concrete was green to escape detection is Somewhat strained and in the court’s experience there are normal striations caused by the forms in a poured concrete wall. Any patching would interrupt the continuity of those striations, and it would be difficult even with a green wall to expect the patch to go undetected.
Giving the defendant the benefit of all inferences to be drawn either factual or speculative from Mr. Everett’s testimony and the testimony of the other witnesses, the defendant has not shown that an emergency condition existed within his knowledge on June 3, 1979.
The next element is that tbje action taken is reasonable in light of circumstances and facts known by the actor at the time, and that the harm he seeks to prevent is greater than the one he commits. There’s no question that the defendant sincerely believed both morally and factually that the criminal act he committed would prevent a more serious harm to the public. The court agrees that a nuclear accident should be avoided, but it is well-founded law that a moral conviction (no matter how strong), without ¿he support of substantive and probative evidence is not enough to bring section 35.05 of the Penal Law into play. If that were the case, anarchy would prevail. Each of us could claim justification for criminal acts when we had strong moral convictions that our cause was just. The fact that the defendant was part of a peaceful demonstration is to his credit, jbut it cannot excuse his action. The criminal law cannot allojw for shadings of meaning. It must be direct and specific to enable each of us to understand the scope of the statute and the criminal act it proscribes or excuses as in the case of justification. Whether nuclear energy *525 is to be used can only be determined by our citizens collectively through their elected representatives and those regulatory agencies that are appointed for that purpose.
It is common knowledge now, based on the President’s Commission Report of the Three Mile Island accident, that the Atomic Energy Commission and its successor, the Nuclear Regulatory Commission (NRC) were guilty of misjudgment with regard to the depth and quality of safety inspection procedures, training of plant operating personnel, along with other important factors about the size, location and necessity for nuclear plants. It is also probably true that LILCO in an effort to protect what they feel is some sort of corporate sovereignty was reluctant to provide to the public complete information about construction standards and safety features incorporated in the construction of the plant, but it is now clear to them and to us that a nuclear plant has the potential for great danger if it is not constructed properly. LILCO and all other companies engaged in these projects cannot hide behind the anonymity and shield of private enterprise, not when the public is so vitally interested, and when they are paying for the construction from rates imposed by the Public Safety Commission. These procedures and attitudes are the concerns of all the citizens not only the defendant. The safety of the people outweighs the public or private interest where there may be a possible nuclear accident caused by plants that are improperly constructed in heavily populated areas. It may come to pass that construction standards established by the trades will have to be changed. It may also be necessary to refit the existing plant, but these solutions must rest with a newly alerted NRC, and our legislative leaders, not with this court.
The last element necessary for justification is that the defendant’s actions have a reasonable certainty of success, and the final result would be to stop the construction of the plant. In the case at bar the police were in place; the defendant knew he would be arrested since he was warned before he acted. His answer to the question did he believe his action would stop the construction of the plant was "Yes, sir, it is and I believe I did that day.” The symbolism of his answer and his act of trespass are not lost on this court, but symbolic acts do not meet the requirements of section 35.05 of the Penal Law.
Regardless of the sincere belief on the part of the defendant *526 that his act was moral and justified, the law is specific, and the court is constrained to find that the defendant has failed to raise the shield of justification for his offense, and therefore has no alternative but to find the defendant guilty of the charge of trespass, a violation of section 140.05 of the Penal Law. The court also denies the motion to dismiss in the interest of justice, and the defendant is instructed to appear for sentencing on January 14, 1980 at 9:30 a.m.