THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v JAMES CROWLEY et al., Defendants.

Justice Court of Town of Greece, Monroe County, January 17, 1989

### APPEARANCES OF COUNSEL

*Howard R. Relin, District Attorney (Joanne M. Winslow* of counsel), for plaintiff. *Miguel A. Reyes* for defendants.

### OPINION OF THE COURT

CHARLES W. ROGERS, J.

The nine defendants in this case were arrested on May 18, 1988 at the office of Dr. Victor Poleshuck, 3101 West Ridge Road, building B, in the Town of Greece, New York, at which time they were protesting and/or attempting to halt the carrying out of abortions at Dr. Poleshuck's office. All of the defendants have been charged with criminal trespass in the third degree pursuant to section 140.10 (a) of the Penal Law. Two of the defendants have also been charged with resisting arrest pursuant to section 205.30 of the Penal Law.

The People have asked by cross motion for an order precluding the defendants from introducing evidence in support of the defense of general justification or necessity during the trial.

Although justification is not an affirmative defense under New York statutory law, the issue of the applicability of the necessity defense is properly before the court at this juncture, pursuant to Penal Law § 35.05 (2), the statute codifying the necessity defense, the final sentence of which provides that "[w]henever evidence relating to the defense of justification under this subdivision is offered by the defendant, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a defense."

The introductory provisions to article 35 of the Penal Law evince an intent to give the justification defense the broadest possible scope. *(People v McManus,* 67 NY2d 541, 547.) Since justification is an ordinary defense rather than an affirmative one, the People must prove its absence to the same degree as any other element of the crime charged whenever justification is sufficiently interposed by the defendants. *(Supra,* at 546, 547.) Interposition of the defense of justification is sufficient where the defendant has shown an underlying evidentiary foundation as to each element of the defense regardless of how weak, inconsistent or dubious, the evidence on any given point may seem so long as a jury might conclude that the evidence supports the defendants' positions and defendants' positions, if substantiated by the evidence, would justify their conduct as a matter of law. *(See, United States v Kabat,* 797 F2d 580, 591 [8th Cir 1986].)

Justification in general terms (excluding self-defense and other limited areas) was for the first time incorporated into the statutory law of New York in the revised Penal Law *(People v Brown,* 70 Misc 2d 224, 226). As it is relevant to the instant case, section 35.05 reads as follows:

"Unless otherwise limited by the ensuing provisions of this article defining justifiable use of physical force, conduct which would otherwise constitute an offense is justifiable and not criminal when * * *

"2. Such conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue. The necessity and justifiability of such conduct may not rest upon

considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder. Whenever evidence relating to the defense of justification under this subdivision is offered by the defendant, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a defense."

"This section[, which] was derived from * * * the Model Penal Code" *(People v Brown,* 68 AD2d 503, 508, quoting Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 35.05, at 83), codifies a "doctrine in substance recognizing and weighing a 'choice of evils' presented by unusual situations 'in which some compelling circumstance or "emergency" warrants deviation from the general rule that transgression of the criminal law will not be tolerated'." It provides " 'a *general justification* for conduct that otherwise would constitute an offense; and * * * such a qualification [i.e., necessity] is essential to the rationality and justice of all penal prohibitions' ". *(People v Brown,* 70 Misc 2d 224, 228, *supra,* quoting American Law Institute Model Penal Code, Tentative Draft No. 8, at 5.) Necessity was viewed in terms of the avoidance of an evil greater than the evil defining the offense charged.

It has been noted that, historically, the defense of necessity has not generated a great deal of case law (1 LaFave and Scott, Substantive Criminal Law, at 631 [1986]) and is poorly developed in Anglo-Saxon law (Note, *Necessity as a Defense to a Charge of Criminal Trespass in an Abortion Clinic,* 48 U Cin L Rev 501, 503 [1979]) perhaps because courts have been fearful of its abuse. A New York court, for example, in disallowing the necessity defense as a bar to criminal liability for a protester charged with trespass at a nuclear power plant, stated that anarchy would prevail if the defendant and others similarly situated could bring section 35.05 into play. *(People v Chachere,* 104 Misc 2d 521, 524.)[1]

---

1. Some courts have said that section 35.05 of the Penal Law should be construed narrowly. *(People v Chachere,* 104 Misc 2d 521, 522 ["Justification is a statutory defense and as such it must be strictly construed"]; *People v Brown,* 70 Misc 2d 224, 229 [the legislative history of section 35.05 discloses an intention that it is to be narrowly construed]; *see also,* 7 Zett, New York Crim Prac, at 65-8.) The question of whether and the extent to which their views remain vital considering the Court of Appeals general observation in *People v McManus* (67 NY2d 541, 547) that article 35 defenses are to be given the broadest possible scope, need not be decided here since the result

At common law, the necessity defense was a social policy that recognized that individuals should at times be free from legal restraints in order to avoid imminent, serious harms *(see generally, United States v Bailey,* 444 US 394, 409-411). Examples where the defense has been invoked include: A parent's withdrawing her children from school because of their ill health despite compulsory attendance laws *(see, State v Jackson,* 71 NH 552, 53 A 1021), a prisoner's escaping because the prison was on fire *(see, People v Whipple,* 100 Cal App 261, 262, 279 P 1008), the master of a ship putting into a port in violation of embargo laws in order to save the lives of those on board *(see, The William Gray,* 29 F Cas No. 17,694, at 1300, 1 Paine 16 [1810]) and a doctor's performing an abortion which would otherwise have been illegal on a young rape victim whose life was endangered by the pregnancy. *(See, Rex v Bourne,* [1939] 1 KB 687, 3 All E R 615.)

Recently, there has been a steadily increasing incidence of cases in which the defense has been raised in an attempt to justify criminally proscribed behavior, such as escape from prison to escape intolerable conditions *(see, People v Brown,* 68 AD2d 503, *supra,* and cases cited therein), criminal trespass at nuclear arsenals *(see, e.g., United States v Quilty,* 741 F2d 1031 [7th Cir 1984]; *United States v Seward,* 687 F2d 1270 [10th Cir 1982], *cert denied sub nom. Ahrendt v United States,* 459 US 1147 [1983]) and at a selective service office *(see, e.g., United States v Simpson,* 460 F2d 515 [9th Cir 1972]), and nuclear power facilities *(see, e.g., People v Chachere,* 104 Misc 2d 521, *supra)* where the harm alleged to support the claim of necessity is some condition or circumstance brought about by society rather than the historically typical case of an unusual emergency, often a natural disaster, requiring criminal behavior as an exigency, to save lives or property.

Abortion clinic trespassing has become one of the most prevalent forms of dissent in recent years. (Note, *The Necessity Defense in Abortion Clinic Trespass Cases,* 32 St. Louis ULJ 523, 524 [1987]) and it has given rise to interposition of the necessity defense as a justification for criminal trespass on abortion clinic premises in a number of reported cases *(see, e.g., Gerlach v State,* 699 P2d 358 [Alaska App 1985]; *Commonwealth v Markum,* 373 Pa Super 341, 541 A2d 347 [1988]; *City of St. Louis v Klocker,* 637 SW2d 174 [Mo App 1982]; *People v*

---

would be the same under both the narrowest and broadest constructions of section 35.05 (2).

*Krizka,* 92 Ill App 3d 288, 416 NE2d 36), although there are, as yet, none reported in the New York Reports.

Section 35.05 (2) of the Penal Law is composed of two separate elements which must be found to exist before conduct which would otherwise constitute an offense can be found to be justifiable and not criminal.

First, such conduct must be found to be necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation or occurrence or developed through no fault of the actor.

Second, the injury must be of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury "clearly outweighs" the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue. *(People v Brown,* 70 Misc 2d 224, 227, *supra;* 7 Zett, New York Crim Prac, at 63-68.)

As to the first requirement, the inquiry rests upon whether the harm alleged, the performance of abortion at a physician's office, can be said to constitute a public or private injury such that emergency measures were required to halt them from taking place. There is no doubt that the defendants sincerely believed that they are. There is also no doubt that the defendants are aware, painfully so, of the status of the law with regard to the legality of abortions in the United States and in New York State.

A woman's right to terminate her pregnancy is protected by her constitutional right to privacy *(Roe v Wade,* 410 US 113), allowed under the New York law (Penal Law § 125.05),[2] and is sanctioned by a substantial portion of society *(see,* Rhoden, *Trimesters and Technology: Revamping Roe v Wade,* 95 Yale LJ 639, 669 [1986]).

A woman has a fundamental right to elect to terminate her pregnancy *(Doe v Bolton,* 410 US 179; *Roe v Wade, supra)* and that right cannot be unduly interfered with by the laws of a State. *(See, Planned Parenthood v Danforth,* 428 US 52.) The State may exercise its right to regulate the abortion decision only once its interest in preserving maternal health becomes compelling, which occurs once the fetus is viable or with the

---

2. In New York State, an abortional act, and the submission to such act, is said to be "justifiable" when performed within the times or under the circumstances enumerated. (Penal Law § 125.05.)

commencement of the second trimester of gestation. *(Roe v Wade,* 410 US 113, 154, 163-165, *supra.)*

The defense of necessity is available only in situations wherein the Legislature has not itself, in its criminal statute, made a determination of values. (1 LaFave and Scott, *op. cit.,* at 629.) Section 35.05 (2) itself provides that where conduct is sought to be vindicated as a necessary emergency measure "[t]he necessity and justifiability of such conduct may not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder." In this case, the very activity labeled an injury by defendants and sought to be prevented has been afforded legal protection by the New York Legislature and by the Supreme Court. *(See, People v Stiso,* 93 Ill App 3d 101, 416 NE2d 1209.)

Most of the cases which have considered the issue of necessity defense in the context of trespassing charges against abortion clinic protesters have held that since the activity being averted is legally protected, the defense fails as a matter of law. *(See,* Note, *The Necessity Defense in Abortion Clinic Trespass Cases,* 32 St. Louis ULJ 523, 524, n 9; *see generally,* Note, *Necessity as a Defense to a Charge of Criminal Trespass in an Abortion Clinic,* 48 U Cin L Rev 501 [1987].)

One writer has stated that these cases are wrongly decided and cites Professor Robinson's treatise on criminal law defenses as support for the proposition that the threatened harm may be legal. (Note, *The Necessity Defense in Abortion Clinic Trespass Cases, op. cit.,* at 525, 526.) Professor Robinson, in the treatise cited, however, writes that "[t]he only threats of harm that should not trigger a justified response are those affirmatively sanctioned—i.e., justified by the legal system" (2 Robinson, Criminal Law Defenses, at 49 [1984]). This is because as long as the laws or policies being protested have been lawfully adopted, they are conclusive evidence of the community's view of the issue. *(Id.,* at 52.)

The defendants assert that since the Supreme Court expressly left open the question of when life begins *(Roe v Wade, supra,* at 159), that there exists a genuine issue of fact as to whether what, in their view, amounts to the killing of human beings is a public or private injury within the terms of section 35.05. "[I]n *Roe [v Wade],* the court acknowledged the existence of competing views regarding the point at which life

begins. However, the court declined to adopt the position that life begins at conception, giving recognition instead to the rights of a woman to make her own abortion decision during the first trimester." *(People v Krizka,* 92 Ill App 3d 288, 291, 416 NE2d 36, 37-38, *supra.)*

A parallel argument found in a dissenting opinion in support of the introduction of evidence of the necessity defense, although not directly urged by the defendants herein, is that, inasmuch as the time at which a fetus attains viability, that is the time at which a fetus is able to live on its own outside the mother without artificial aid, is not necessarily the same now as it was when *Roe (supra)* was decided, the defendants should be allowed to offer proof that, given the current state of medical technology, viable fetuses may have been scheduled for abortions on the day of the protest, even though they were within the first trimester of gestation. *(See, Commonwealth v Markum,* 373 Pa Super 341, 541 A2d 347 [1988] [Tamilia, J., dissenting], *supra.) Roe,* however, did not intend, and the court is not ready to ask the jury to make a case-by-case judicial determination of when life begins. *(See, People v Krizka,* 416 NE2d, *supra,* at 38, 39.)

*Roe v Wade (supra)* forbade States from restricting abortions when to do so would infringe upon a pregnant woman's privacy rights. However, apart from the fact that the defendants have thus far failed to show that the practice of legal abortions in New York State may constitute an imminent public or private harm within the context of the metajudicial questions regarding the advent of human life left unanswered in *Roe,* it must also be noted that New York's abortion liberalization statute (L 1970, ch 127, *amdg* Penal Law § 125.05 [3]), which makes abortions performed within 24 weeks of commencement of a woman's pregnancy, or which are performed to save the life of the mother, legal, preceded the *Roe* decision. The New York Court of Appeals upheld the constitutionality of the statute, before the Supreme Court reached the *Roe* decision when faced with a complaint that New York law violated the rights of the unborn in *Byrn v New York City Health & Hosps. Corp.* (31 NY2d 194 [1972], *appeal dismissed* 410 US 949, *reh denied* 411 US 940).

The Legislature in New York has clearly made a determination of values regarding the practice of abortion in New York. Since it has done so, its decision governs. (1 LaFave and Scott, *op. cit.,* at 629.) The legislative history of New York's abortion liberalization statute was spelled out in detail by the New

York Supreme Court, Appellate Division, Second Judicial Department, in *Byrn v New York City Health & Hosps. Corp.* (38 AD2d 316 [1972]) which was the case brought to, and affirmed by, the Court of Appeals in the *Byrn* decision upholding the abortion liberalization statute.

The *Byrn* cases *(supra)* leave little room for speculation as to the meaning of the New York State abortion law with respect to abortions performed within 24 weeks of conception and, at least with regard to criminal cases arising from attempts to disrupt medical procedures that are within the parameters of the law,[3] the necessity defense must fail as a matter of law.

As to the second requirement, or threshold showing, that the defendants must make in order to interpose the necessity defense as a matter of law, that the urgency of the imminent harm must outweigh the desirability of proceeding against those who have transgressed that law for the purpose of averting the harm, the defendants have likewise fallen short of putting forward a sufficient underlying evidentiary foundation. The obstruction of the operation of a medical facility performing procedures which the Supreme Court has deemed to be a fundamental right is not clearly outweighed by the possibility of their having to submit to the criminal penalties which may result.

"Again, this reasoning is dependent upon the legality of abortion. Abortion can be construed 'as the taking of life or as the legal termination of pregnancy' * * * . Defendants here believe the former characterization, our courts, under the present status of the law, must accept the latter * * *. Under *Roe v. Wade, supra,* the potential of life in an unborn fetus is not entitled to legal protection before viability * * *. Thus, legally, the abortion procedure is untainted. Balancing this legally untainted harm [public or private injury in the language of Penal Law § 35.05] of abortion against trespass * * * [this court concludes] that as a matter of law the trespass which interferes with a fundamental harm is the greater

---

3. The defendants have made no offer of proof that they had reason to know, at the time of their arrests, that the clinic was about to perform abortional acts which were not justifiable under New York law. While the court does not now reach the issue as to whether their conduct would be justified under the necessity doctrine had they reasonably believed this to be so, the defendants are entitled to make such an offer of proof so that the court may decide whether in that event, evidence of the necessity of their actions may be presented to a jury.

harm." *(See, City of St. Louis v Klocker,* 637 SW2d 174, 177 [Mo App 1982], *supra.)*

In perhaps the broadest terms suggested, it has been said that "[i]n determining whether or not to allow a defendant to raise the defense of necessity, a trial judge should only decide whether or not the question of values presented by the defendant is frivolous. If the values asserted by the defendant are so bizarre as to be clearly unacceptable to any significant portion of the community, the defense should not be allowed." (Arnolds and Garland, *The Defense of Necessity in Criminal Law: The Right to Choose the Lesser Evil,* 65 J Crim L & Criminology 289, 296 [1974].)

The values asserted by the defendants herein are in no sense frivolous or bizarre, but to resort to the necessity defense leads to an incongruous result. If abortion trespassers are given license to disrupt the activities of abortion clinics and refuse to desist upon being requested to vacate the premises by the licensed operators of the facility and the licensed operators exercise their statutory right to employ necessary physical force to prevent what they reasonably believe to be a criminal trespass as is their right, pursuant to Penal Law § 35.20 (2), the continuing battle between those who abhor abortion and those that believe it is a private moral decision could well be joined in physical confrontations into which the police and the courts would be rendered unable to intervene.

It is an unusual and difficult occasion for the court to rule as a matter of law that individuals are not protected by general necessity when acting illegally albeit in furtherance of a heartfelt belief that they must do so to discontinue infanticide. Nonetheless, the enduring clashes of beliefs in this fractious dispute must be resolved not by physical confrontations at the front line, but rather through the legislative and judicial framework created for the very purpose of undertaking the sometimes formidable tasks of choosing between extreme positions and competing values.

Accordingly, the People's motion to preclude the defendants from introducing evidence in support of the defense that their attempts to impede legal abortion procedures were justified by necessity is granted and no such evidence will be permitted during the course of the trial.