OPINION OF THE COURT
Joanna Seybert, J.
Defendants Brisotti, Hamilton, Lannig, Neil, Sandberg, Scu *441 tari and Toritto are accused of violating Penal Law § 140.05 (trespass, a violation) on February 2, 1990 by way of a District Court information with supporting depositions. A nonjury trial for all defendants jointly was held on May 21 to 23 and 24, 30 and June 15,1990 before this court.
The defendants are citizens living in or near Nassau County well informed on the issues of life in El Salvador and familiar with accounts of human torture, displacement and death in El Salvador. The facts as adduced at trial indicate that a few of the defendants had tried on numerous occasions to speak to Congressman Raymond McGrath about United States policy with respect to continuation of aid to the El Salvadorian government currently in the throes of a civil war. The reported death of six Jesuit priests and two civilian women in El Salvador, allegedly by persons affiliated with the El Salvadorian government, spurred the defendants to seek a meeting with their United States Congressman. About 30 people gathered at the Congressman’s office at around 3:30 p.m. on February 2, 1990 in an attempt to gain an appointment with the Congressman. Staff members with limited knowledge of the events or policies in El Salvador, allowed the group to remain in the small waiting room but declined to make an appointment for the group or individual members with the Congressman. The group dwindled in number as the office closing time approached and at 5:00 p.m., the staff asked the defendants to leave for the office closing. The defendants continued to read, lecture and pray rather than leave. The police arrived, asked the defendants to leave and subsequently arrested the nine defendants that did not exit the office. The Congressman’s staff signed complaints and supporting depositions that serve as the basis of the charges of trespass pursuant to Penal Law § 140.05 for failure to leave the office at closing time.
During the course of this lengthy trial, defendants presented a comprehensive case replete with witnesses that eloquently and intellectually informed the court of the reasons for their behavior on February 2, 1990. As early as the first day of trial, it was apparent that the defendants as advocates of human rights and peace, would rely on the "justification” defense to excuse what would otherwise be criminal action, to wit: criminal trespass.
In order to effectively offer the defense of justification, the court must rule as a matter of law, whether the claimed facts and circumstances, if established, constitute a defense pursuant to Penal Law § 35.05 (2). In the event that the court finds *442 as a matter of law that the defense could be established, the People then have the burden of disproving justification or showing that the facts and circumstances for justification were not established. (People v McManus, 67 NY2d 541; People v Brown, 68 AD2d 503.) Upon a careful review of the testimony presented at trial and the relevant statutory law, this court finds that as a matter of law, the facts and circumstances presented do not constitute the defense of justification as contemplated by the New York Penal Law.
The justification defense set forth in Penal Law § 35.05 (2) contains two elements:
1. that the conduct was necessary as an emergency measure to avoid imminent public or private injury which is about to occur through no fault of the defendants, and
2. that according to ordinary standards of intelligence and morality, avoiding such public or private injury is clearly more desirable than avoiding the harm sought to be prevented.
This same statute compels the trial court to rule, as a matter of law, whether the facts and circumstances as presented at trial, constitute the defense of justification.
The defense of justification has been raised in many recent cases involving moral and social issues. Examples include criminal trespass at nuclear installations (People v Chachere, 104 Misc 2d 521), selective service offices (United States v Simpson, 460 F2d 515), health department offices concerning funding for HIV research (People v Alderson, 144 Misc 2d 133) and abortion clinics (People v Crowley, 142 Misc 2d 663). The defense of justification essentially requires that the harm avoided must clearly outweigh the harm done. (1 LaFave and Scott, Substantive Criminal Law § 5.4 [1986].) New York has embellished the Model Penal Code defense of justification with an additional term of immediacy. Thus, the threat of imminent harm must clearly outweigh the emergency measure by defendants (trespass). The introductory notes to article 35 of the New York Penal Law indicate that the justification defense should be given the broadest possible scope. (People v McManus, 67 NY2d 541, supra.) The court must analyze the statutory intent and mandate in the context of the facts and circumstances of this case.
The first element necessary to establish this defense is that the emergency or necessity existed wherein defendants sought to avoid imminent public or private injury. In this regard, *443 testimony was given by defendants themselves and two witnesses. One of defendants’ witnesses, Ramsey Clark, a former United States Attorney, testified as an expert in international and human rights law explaining that the law of this country incorporates a vast amount of international law as well as constitutional law and various treaties. Mr. Clark went on to explain that continued United States aid to the Christiani government of El Salvador is equivalent to a violation of one of the Geneva accords. Thus, individuals are obliged to the extent they are able to prevent violation of international law as well as violation of the law of this land. Accordingly, the defendants’ constitutional right to petition and protest is the fundamental way they as members of society can seek changes in our common destiny. This right to petition was allegedly thwarted by the arrest for trespass.
Various other witnesses testified in sincere terms as to their personal and philosophical experiences with the cause of the El Salvadorian people as well as members of religious communities recently slain there. The court acknowledges that it is unreasonable to argue that senseless murder of innocent El Salvadorians is not a more serious harm than a peaceful assembly and trespass at a United States Congressman’s office. However, it is just as unreasonable to argue that there are not reasonable alternatives to violating the law. The defendants offered no proof that Congressman McGrath’s vote to continue United States aid to the government in El Salvador created an imminent emergency to anyone’s life other than their personal beliefs that it might.
The court acknowledges that international law is a part of United States law. The United States Congress pursuant to US Constitution, article I, § 8 (10) has the power to define and punish offenses against laws of Nations. (Filartiga v Pena-Irala, 630 F2d 876.) However, defendants offered no proof that the Congressman’s vote would have any immediate impact on the continued funding of the Christiani government. Trooping en masse, albeit peacefully into the Congressman’s office in an attempt to arrange a meeting is not an emergency measure that could reasonably have been thought to accomplish the goal of changing United States policy. Defendant Toritto testified that their purposes in the office were to get an appointment to see the Congressman in person and to educate him as to the situation in El Salvador. Testimony by defense witness William Ford urged the court to give a broad interpretation to Penal Law § 35.05 in that the imminent public or *444 private injury sought to be avoided must include violations of international human rights in El Salvador. It would then follow that the minimal disruption by defendants is insignificant when compared to the ongoing human rights violations in El Salvador. However, the imminent injury to the El Salvadorians must come within the injuries contemplated by the justification defense embodied in Penal Law § 35.05 (2). The statute authorizes justification in a limited number of cases where conduct otherwise condemned is found necessary as an emergency measure to avoid imminent injury. (People v Brown, 68 AD2d 503, supra.) In so determining the facts and circumstances as presented, the court must construe the defense in a less expansive manner than the defendants would wish. (People v Chachere, 104 Misc 2d 521, supra.)
Giving the defendant the benefit of all inferences to be drawn from the testimony of the distinguished and knowledgeable witnesses, the defendants have not shown facts or circumstances to satisfy the first element of the defense of justification, that there existed an emergency or necessity that compelled defendants to commit criminal trespass.
The next element to be established by defendants to successfully assert the defense of justification is that avoiding the pubic or private injury was more desirable and urgent than the avoidance of the results of the crime, trespass. This element has two fundamental statutory caveats: (1) this element must be determined by ordinary standards of morality and intelligence and (2) the morality or advisability of the injury may not be a consideration upon which this defense is established. (People v Goetz, 68 NY2d 96; People v Baker, 127 AD2d 601.) The question which the court must determine from the testimony and evidence offered at trial is whether under this statutory threshold of "ordinary standards of intelligence and morality”, the court may find that these acts of trespass could have been an injury to be avoided. (Penal Law § 35.05 [2].) The defense is unavailable where alternative options exist to the defendants. (United States v Bailey, 444 US 394, 410.)
Those who wish to protest in an unlawful manner frequently are impatient with less visable and more time-consuming alternatives. The defense of justification does not arise from a choice of modes of action, it is instead based upon a real emergency. Thus, if there is a reasonable legal alternative to violating the law the defense fails. (United States v Dorrell, 758 F2d 427 [9th Cir 1985].) The defendants cannot *445 use the justification defense to legitimize unlawful action intended to limit the advancement of ideas contrary to one’s own. The statute expressly precludes moral convictions as a basis for the defense sought to be proven at trial. The defendants have not shown the existence of an unusual situation in which an emergency or compelling circumstance warrants a deviation from the general rule that violation of the criminal law will be tolerated. (People v Brown, 68 AD2d 503, supra.) Nothing has been offered by the defendants to meet the fundamental requirements of Penal Law § 35.05 (2) that the conduct was necessary as an emergency measure to avoid public injury which is about to occur. Nor have defendants even approached the second requirement that according to ordinary standards of morality, the desirability of avoiding such injury clearly outweighed the desirability of avoiding criminal trespass. In cases of moral indignation, the flexibility of the New York statute for the justification defense clearly avoids the conflict between what is legal and what is moral.
Viewing defendants’ factual allegations and legal arguments in the light most favorable to them, they fail to meet the statutory requirements for the establishment of the justification defense. The act of radical lobbying of a Congressman is not an emergency measure that will directly prevent the future appropriation of United States aid to El Salvador. However, notwithstanding the inapplicability of the justification defense, the defendants did act with good motives which may be considered with respect to the punishment for the offense.
Having determined that defendants have not met the fundamental requirements for the defense of justification, the court as the trier of fact must determine if the People have met the burden of proving beyond a reasonable doubt that defendants committed the crime of trespass. The People at trial have proven beyond a reasonable doubt that the defendants have committed trespass. The elements of trespass (Penal Law § 140.05) are: that the defendant knowingly enters or remains, unlawfully, in or upon premises.
Testimony of the defendants indicated that those people knowingly remaining in the waiting room of Congressman McGrath’s office after 5:00 p.m., the closing time, were given notice that the office was closing at that time.
Defendants have questioned the People’s ability to show the defendants possessed the requisite intent. Testimony was *446 given wherein it was alleged that the arrest of defendants interfered with the exercise of their First Amendment right of freedom of speech. However, testimony given by Mr. Ramos as well as Mr. Toritto showed that the defendants were treated with courtesy and respect, they were not hindered in any way from their prayers and discussions. The defendants were asked to leave because of their trespassing conduct, not their speech. (People v Bush, 39 NY2d 529.) Although the state of mind of defendants is a crucial fact, good faith and an erroneous belief that their conduct is required will not negate the intent element in this case. (People v Cardone, 68 NY2d 829.)
The Congressman’s office although considered a public place, could properly be restricted to reasonable time, place and manner regulations. (Olivieri v Ward, 801 F2d 602 [2d Cir 1986]; People v O’Grady, 147 Misc 2d 118.) The court is satisfied that defendants received a lawful order to leave the office from the office managers and police.
Furthermore, under the circumstances as testified, nine adults in a room with the approximate dimensions of 9 feet by 6 feet, had sufficient knowledge that 5:00 p.m. was the office closing time and that they were expected to leave. The defendants were at no time precluded from being at the office during the office’s business hours. The over-all message gleaned from the testimony at trial indicates that each defendant intentionally sought to remain in the Congressman’s office in an effort to demonstrate the intensity of their sympathies with the plight of the people of El Salvador and their strenuous opposition to continued aid to the El Salvadorian government.
Thus, the defendants are found guilty of trespass, without the benefit of the justification defense pursuant to Penal Law § 35.05.