STATE, Appellant v. MUNSON, Respondent

(201 N.W.2d 123)

(File No. 10828.  Opinion filed September 26, 1972)

**Gordon Mydland,** Atty. Gen., **C. J. Kelly,** Asst. Atty. Gen., Pierre, **Jack Klauck,** State's Atty., Rapid City, for plaintiff and appellant.

**Homer Kandaras,** Rapid City, **Roy Lucas,** New York City, for defendant and respondent.

HANSON, Presiding Judge.

Defendant H. Benjamin Munson, a licensed physician, was charged with the crime of abortion in an Information filed by the State's Attorney of Pennington County. Defendant's motion to dismiss was granted by the trial court upon the grounds the abortion statute constitutes an unconstitutional invasion of individual right without a compelling interest in the State.

Our abortion law was first enacted in 1887. It has remained substantially unchanged since territorial days and now appears in SDCL 22-17-1 as follows:

"Every person who administers to any pregnant woman or who prescribes for any such woman or advises or procures any such woman to take any medicine, drug, or substance or uses or employs any instrument or other means with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the state penitentiary not exceeding three years or in a county jail not exceeding one year."

To sustain and justify the dismissal of the Information defendant asserts the abortion law is unconstitutional because of numerous alleged infringements on his rights and also the rights of married and unmarried mothers as follows:

1.  It interferes with a physician's right to practice medicine and care for his patients according to the highest professional standards;

2. It invades the right of individual privacy including the right to obtain an abortion for an unwanted pregnancy;

3. The statutory phrase "unless the same is necessary to preserve her life" is vague and indefinite; and

4. It is overly broad and an unwarranted exercise of the police power in violation of the Fourteenth Amendment in absence of a compelling state interest in the subject.

The present action follows a pattern of attack made against similar abortion laws in other states. On one or more of the above grounds challenges to the abortion laws of California, Texas, Florida, Illinois, Georgia, and Wisconsin have been sustained in the following cases: People v. Belous, 71 Cal.2d 954, 80 Cal.Rptr. 354, 458 P.2d 194, cert. den., 397 U.S. 915, 90 S.Ct. 920, 25 L.Ed.2d 96 (1969); Doe v. Wade, 314 F.Supp. 1217 (N.D.Tex.1970); State v. Barquet, Fla., 262 So.2d 431 (1972); Doe v. Scott, 321 F.Supp. 1385 (N.D.Ill.1971); Doe v. Bolton, 319 F.Supp. 1048 (N.D.Ga.1970); Babbitz v. McCann, 310 F.Supp. 293 (E.D.Wis.1970).

On the other hand, challenges to the abortion laws of Ohio, North Carolina, Mississippi, Louisiana, District of Columbia, and Iowa have been denied in Steinberg v. Brown, 321 F.Supp. 741, (N.D.Ohio 1970); Corkey v. Edwards, 322 F.Supp. 1248 (W.D.N.C. 1971); Spears v. State (Miss.Sup.Ct.), 257 So.2d 876 (1972); Rosen v. Louisiana State Board of Medical Examiners, 318 F.Supp. 1217 (E.D.La. 1970); United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971); State v. Abodeely, 179 N.W.2d 347 (Iowa 1970).

The root case in this area of constitutional law is Griswold v. State of Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510, in which the Supreme Court held the Connecticut law forbidding the use of contraceptives was an impermissible intrusion upon the constitutionally protected peripheral or penumbral right of marital privacy. In doing so the court relaxed the general rule that a litigant has standing to assert only his own constitutional

rights or immunities by allowing the appellants, one of whom was a doctor, to raise the constitutional rights of the married people with whom they had a professional relationship.

The Griswold doctrine was recently extended in Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349, by declaring a Massachusetts statute which permitted married persons to obtain contraceptives but denied the same right to single persons to be invalid as a violation of the equal protection clause. In speaking of the right of privacy the court said if it means anything "it is the right of the **individual,** married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child."

The extension of the Griswold doctrine to the right of a woman to terminate an unwanted pregnancy is illustrated by the reasoning employed by the three-judge Federal Court in Doe v. Scott, D.C., 321 F.Supp. 1385, in which the Illinois abortion law was determined to be unconstitutional:

"We cannot distinguish the interests asserted by the plaintiffs in this case from those asserted in **Griswold.** In both, '[t]he essence of the interest sought to be protected * * * is the right of choice over events which, by their character and consequences, bear in a fundamental manner on the privacy of individuals.' It is as true after conception as before that 'there is no topic more closely interwoven with the intimacy of the home and marriage than that which relates to the conception and bearing of progeny.' We believe that **Griswold** and related cases establish that matters pertaining to procreation, as well as to marriage, the family, and sex are surrounded by a zone of privacy which protects activities concerning such matters from unjustified governmental intrusion.

We do not agree with the defendants that the choice whether to have a child is protected before conception but is not so protected immediately after conception has

occurred. A woman's interest in privacy and in control over her body is just as seriously interfered with by a law which prohibits abortions as it is by a law which prohibits the use of contraceptives. The majority of courts which have considered the question have so held, concluding that a woman has a fundamental interest in choosing to terminate a pregnancy. In People v. Belous, **supra,** the California Supreme Court struck down that state's abortion statute, holding:

> The fundamental right of the woman to choose whether to bear children follows from the Supreme Court's and this court's repeated acknowledgment of a 'right of privacy' or 'liberty' in matters related to marriage, family, and sex.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

Moreover, a statute which forces the birth of every fetus, no matter how defective or how intensely unwanted by its future parents, displays no legitimately compelling state interest in fetal life, especially when viewed with regard for the countervailing rights of pregnant women. We do not believe that the state has a compelling interest in preserving all fetal life which justifies the gross intrusion on a woman's privacy which is involved in forcing her to bear an unwanted child. We therefore rule that during the early stages of pregnancy — at least during the first trimester — the state may not prohibit, restrict or otherwise limit women's access to abortion procedures performed by licensed physicians operating in licensed facilities."

We do not find the reasoning in such cases persuasive. There is a fundamental difference between the right to use contraceptives and the right to terminate a pregnancy. We, therefore, agree with those cases which have refused to invalidate the abortion laws in other states for any of the reasons advanced by the defendant in the present action. In Steinberg v. Brown, D.C.,

321 F.Supp. 741, a three-judge Federal Court refused to find the Ohio abortion law unconstitutional. In disposing of the most significant contentions involved the court said:

"We believe that the better reasoning is found in those cases which hold that there is no unconstitutional vagueness in the abortion statutes which they consider. It appears to us that the vagueness which disturbs the plaintiffs herein results from their own strained construction of the language used, coupled with the modern notion among law review writers that anything that is not couched in numerous paragraphs of fine-spun legal terminology is too imprecise to support a criminal conviction. See Davis v. Toledo Metropolitan Housing Authority, 311 F.Supp. 795, 797 (N.D.Ohio W.D. 1970). The words of the Ohio statute, taken in their ordinary meaning, have over a long period of years proved entirely adequate to inform the public, including both lay and professional people, of what is forbidden. The problem of the plaintiffs is not that they do not understand, but that basically they do not accept, its proscription.

The second contention of the plaintiffs and those **amicus curiae** who support their position is that the Ohio abortion statute deprives them of the right of privacy which is supposedly protected by several amendments to the Constitution of the United States. The arguments and authorities cited go on at inordinate length, but when the meringue is sluiced away, they come down to the contention that the decision of the Supreme Court in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), which recognized the right of marital privacy by voiding a statute preventing dissemination of contraceptive information and devices, must by extension protect the right to destroy the product of conception after it has taken place.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

The plaintiffs' contentions seek to extend far beyond the holding in the **Griswold** case this 'right of privacy', which

is nowhere expressly mentioned in the Constitution or its amendments, but is only found in the 'penumbra' of those articles. Rights, the provision of which is only implied or deduced, must inevitably fall in conflict with the express provisions of the Fifth and Fourteenth Amendments that no person shall be deprived of life without due process of law. The difference between this case and **Griswold** is clearly apparent, for here there is an embryo or fetus incapable of protecting itself. There, the only lives were those of two competent adults.

Without going into all of the myriad of cases and texts that deal with various aspects of this problem, the question resolves itself into whether or not the state has a legitimate interest to legislate for the purpose of affording an embryonic or fetal organism an opportunity to survive. We think it has and on balance it is superior to the claimed right of a pregnant woman or anyone else to destroy the fetus except when necessary to preserve her own life.

※　　　※　　　※　　　※　　　※　　　※　　　※　　　※

Thus contraception, which is dealt with in **Griswold,** is concerned with preventing the creation of a new and independent life. The right and power of a man or a woman to determine whether or not to participate in this process of creation is clearly a private and personal one with which the law cannot and should not interfere.

It seems clear, however, that the legal conclusions in **Griswold** as to the rights of individuals to determine without governmental interference whether or not to enter into the processes of procreation cannot be extended to cover those situations wherein, voluntarily or involuntarily, the preliminaries have ended, and a new life has begun. Once human life has commenced, the constitutional protections found in the Fifth and Fourteenth Amendments impose upon the state the duty of safeguarding it."

In a similar vein a three-judge Federal Court upheld the North Carolina abortion statute in Corkey v. Edwards, D.C., 322 F.Supp. 1248, by saying:

"There is nothing in the United States Constitution about birth, contraception or abortion. But in Griswold v. Connecticut, **supra,** the Supreme Court derived from the several amendments to the Constitution a right of privacy. We are urged to extend Griswold v. Connecticut, **supra,** and its zone of privacy to insulate abortion from legislative control. In **Griswold** the Supreme Court recognized a zone of marital privacy into which the state may not constitutionally intrude where its only interest in doing so was said to be the discouragement of extramarital sexual relations. Thus, the court struck down Connecticut's law forbidding the giving of information and instruction and advice to married persons as to the means of preventing conception.

     *        *        *        *        *        *        *        *

We deal in this case, however, not merely with whether a woman has a generalized right to choose whether to bear children, but instead with the more complicated question whether a pregnant woman has the right to cause the abortion of the embryo or fetus she carries in her womb. We do not find that an equation of the generalized right of the woman to determine whether she shall bear children with the asserted right to abort an embryo or fetus is compelled by fact or logic. Exercise of the right to an abortion on request is not essential to an effective exercise of the right not to bear a child, if a child for whatever reason is not wanted.    *   *   *

To determine the state interest we shall not attempt to choose between extreme positions. Whether possessing a soul from the moment of conception or mere protoplasm, the fertilized egg is, we think, 'unique as a physical entity,' Lucas, Federal Constitutional Limitations of the Enforcement and Administration of State

Abortion Statutes, 46 N.C.L.Rev. 730, 744 (1968), with the potential to become a person. Whatever that entity is, the state has chosen to protect its very existence. The state's power to protect children is a well established constitutional maxim. See, Shelton v. Tucker, 364 U.S. 479, 485, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960), Prince v. Massachusetts, 321 U.S. 158, at 166-168, 64 S.Ct. 438, 88 L.Ed. 645. That this power should be used to protect a fertilized egg or embryo or fetus during the period of gestation embodies no logical infirmity, but would seemingly fall within the 'plenary power of government.' Poe v. Ullman, 367 U.S. 497, at 539, 81 S.Ct. 1752, 6 L.Ed.2d 989 (Harlan, J., dissenting). That there is a state interest has until recently been taken for granted. History sides with the state."

The United States Supreme Court held the phrase contained in the District of Columbia abortion law "unless the same were done as necessary for the preservation of the mother's life or health" was not unconstitutionally vague or indefinite by concluding "the term 'health' presents no problem of vagueness. Indeed, whether a particular operation is necessary for a patient's physical or mental health is a judgment that physicians are obviously called upon to make routinely whenever surgery is considered." United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601. The same reasoning applies to the phrase "unless the same is necessary to preserve her life" appearing in our abortion statute. See Steinberg v. Brown, D.C., 321 F.Supp. 741, Babbitz v. McCann, D.C., 310 F.Supp. 293, State v. Abodeely, 1970, Iowa, 179 N.W.2d 347, and Rosen v. Louisiana State Board of Medical Examiners, D.C., 318 F.Supp. 1217, in which the constitutionality of similar statutory language appearing in the abortion laws of Ohio, Wisconsin, Iowa, and Louisiana was upheld.

■ Perhaps our abortion law reflects a Puritanical view and should be repealed, amended, or modified. But this does not convert the issue into a legal question or render the statute unconstitutional. The subject of abortion is an explosive mixture of medical, moral, social, and religious issues and concepts. Its

eventual resolution rests entirely in the legislative branch of our government subject only to constitutional restrictions. It involves far more than an individual desire to have an abortion and a willing aborter. The State, in our opinion, has a compelling and legitimate interest to determine when, where, and by whom a pregnancy shall be terminated.

Reversed.

BIEGELMEIER, WINANS and WOLLMAN, JJ., concur.

DOYLE, J., not having been a member of the court at the time of argument, took no part in this decision.