STATE of South Dakota and City of Sioux Falls, Plaintiffs and Appellees,

v.

Kent BOWERS (# 17562), James Stiegelmeier (# 17563), Kurt Bowers (# 17564), Paul Dorr (# 17565), and Kathleen Ellenbecker (# 17566), Defendants and Appellants.

Nos. 17562 through 17566.

Supreme Court of South Dakota.

Considered on Briefs Dec. 3, 1991.

Reassigned Nov. 12, 1992.

Decided March 24, 1993.

Rehearing Denied May 3, 1993.

Mark Barnett, Atty. Gen., Pierre, David R. Nelson, Minnehaha County State's Atty., Sioux Falls, for plaintiff and appellee, State.

Janet F. Brekke, Asst. City Atty., Sioux Falls, for plaintiff and appellee, City of Sioux Falls.

Steven A. Haugaard of Hunt, Haugaard & Kahn, Richard L. Johnson, Sioux Falls, Eugene J. Irons, Canton, for defendants and appellants.

MILLER, Chief Justice (on reassignment).

Appellants Kent Bowers, James Stiegelmeier, Kurt Bowers, Paul Dorr and Kathleen Ellenbecker brought appeals in circuit court challenging their magistrate court convictions and sentences which arose out of their participation in an anti-abortion protest.[1] The circuit court affirmed the convictions but modified the sentences imposed. We affirm the circuit court.

## FACTS

On April 12, 1990, a large group of people, which included appellants, gathered at the Women's Medical Clinic in Sioux Falls, South Dakota, to protest against abortions taking place there and to dissuade patients from entering the clinic to obtain an abortion. Prior to this protest, the organizers had met with police in hopes of keeping their protest peaceful. The protest consisted of praying, singing and reading the bible. The protestors congregated on the parking lot and lawn of the clinic and blocked the south and east doors into the clinic. Although the protestors made no threats and induced no violence, they obstructed at least one person's access to the clinic.

The police were called to the clinic. Anticipating a violent protest, they called in seventy-seven officers, including twenty-one off-duty officers, some of whom were detailed to various areas to put up a yellow barrier tape which read "Police Line Do Not Cross." An officer, using a bull horn to amplify his voice, read a statement to the protestors ordering them to leave the clinic's property. This statement was also read to those who were congregated at the clinic's doors, whereupon the protestors left the clinic's property and gathered on the sidewalk. An officer then read a warning, in all of the areas where the protestors were congregated, to stay off the clinic property and to not cross the police line. This warning was read from various sites on the property at least eighteen times. Despite the numerous warnings, protestors

---

1. It appears that not all of those found guilty by the magistrate judge appealed to the circuit court, and only these five defendants appeal to this court.

crossed the police barrier to go back onto clinic property and to resume blocking the south and east doors of the clinic. The police then began to arrest protestors. An officer read another statement telling the people congregated at the east door to disperse or risk being arrested.

The police, as a result of their foresight and planning, implemented newly developed methods and procedures for arresting and identifying arrestees who might refuse to identify themselves: An officer making an arrest put his badge number and a sequential arrest number on a card which was videotaped with the person being arrested; another officer videotaped the person from the time of the arrest until that person was taken to a waiting bus which the police had rented; at the bus, the sequential arrest number was written on the arrested person's hand; and finally, a still photograph was taken of each person before they were loaded on the bus. Fifty-eight people, including appellants, were arrested in this manner.

The arrested protestors were charged with one count of unlawful occupancy of property in violation of SDCL 22–35–6[2] and one count of disorderly assembly in violation of Rev.Ord.City of Sioux Falls § 26–27.[3] The protestors requested jury trials and permission to present the defense of justification by necessity. The magistrate judge denied the motions for jury trials, assuring the protestors that he would impose no jail sentences in the event they were found guilty. The motion to present the defense of justification was also denied, although the magistrate judge did allow an extended offer of proof. Pursuant to an agreement of the parties, the cases were joined for trial. The protestors were found guilty on both counts. The magistrate judge then imposed fines and jail sentences which included seven to fourteen days jail

time which was suspended on the condition of no like offenses for one year.

Separate notices of appeal were filed with the circuit court which were consolidated for purposes of briefing and oral argument. The circuit judge affirmed the convictions but modified the sentences imposed by deleting the suspended jail time. This appeal followed.

## ISSUE I

WHETHER THE CIRCUIT COURT ERRED IN AFFIRMING THE MAGISTRATE COURT'S RULING THAT APPELLANTS ARE NOT ENTITLED TO A JURY TRIAL.

■ The United States Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[.]" U.S. Const. amend. VI. This right, however, does not extend to crimes which carry a possible jail penalty of only six months' imprisonment. *Baldwin v. New York*, 399 U.S. 66, 69, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437, 440 (1970).

The South Dakota Constitution provides in part: "In all criminal prosecutions the accused shall have the right to ... a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." S.D. Const. art. VI, § 7; SDCL 23A–16–3.

■ In *State v. Wikle*, 291 N.W.2d 792 (S.D.1980), this court explained that the right to a jury trial extends to a criminal prosecution for which there could be imposed "a direct penalty of incarceration for any period of time[.]" *Id.* at 794. In 1984, this court modified *Wikle* when we held "a court may deny a jury trial request in a criminal prosecution when the court as-

---

2. SDCL 22–35–6 reads in part: "Any person who, knowing that he is not privileged to do so, enters or remains in any place where notice against trespass is given ... is guilty of a Class 2 misdemeanor[.]" A Class 2 misdemeanor at the time of the alleged offenses was punishable by a maximum of thirty days in a county jail, a $100 fine, or both. SDCL 22–6–2. In 1991, the maximum fine was increased to $200.

3. This ordinance provides a definition of "disorderly assembly" and outlines the authority of the police department to disperse such persons. The statute further provides definitions of certain terms. A violation of this ordinance is punishable by a maximum of thirty days in the county jail, a $100 fine, or both.

sures the defendant at the time of request that no jail sentence will be imposed. This is, of course, limited to prosecution of offenses with maximum authorized jail sentences of less than six months."[4] *State v. Auen,* 342 N.W.2d 236, 238 (S.D.1984). Appellants argue that the magistrate judge erred because the sentences imposed on them are beyond the scope of *Auen.*

Violators of either the state law, a Class 2 misdemeanor, or the municipal ordinance here at issue could, at the time of the alleged offenses, be punished by a maximum of thirty days in a county jail, a $100 fine, or both. When the magistrate judge was presented with the requests for jury trials, he noted that although he has granted jury trials in petty theft cases, he would not grant appellants jury trials. The magistrate judge assured appellants he would impose no jail sentences in the event they were found guilty. Nevertheless, after the trial the magistrate judge imposed suspended jail sentences as well as fines. The magistrate judge then placed appellants on probation for one year.

Appeal was then taken to the circuit court. "The circuit courts have such appellate jurisdiction as may be provided by law." S.D. Const. art. V, § 5. The appellate jurisdiction of the circuit courts extend to "appeals from all final judgments, decrees or orders of all courts of limited jurisdiction, inferior officers or tribunals, in the cases prescribed by statute." SDCL 16–6–10. Further, unless "denied by law there shall be a right of appeal to the circuit court from any final order or judgment of the magistrate court and such appeal shall be. taken in the manner prescribed by law or rule for appeals to the circuit court." SDCL 16–12A–27. Where, as here, "an appeal is taken to the circuit court from a judgment rendered in a magistrate court with a law-trained magistrate presiding, the circuit may review all matters appearing in the record relevant to the question of whether the judgment appealed from is erroneous; the circuit court may

affirm, reverse, remand, or modify the judgment." SDCL 15–38–38.

■ On appeal, the circuit court noted that as the magistrate court "denied the jury trial upon this assurance [of no jail sentence], a final judgment entered imposing a suspended seven days in the county jail was contrary to the assurance of the court." The circuit court then modified the sentences imposed and deleted the portions of the judgments which imposed jail time. We agree with the circuit court judge that the magistrate judge improperly imposed a one-year probation with suspended jail sentences.

■ Appellants argue that the deletion of the suspended jail time did not cure the magistrate judge's error. "A court may correct an illegal sentence at any time[.]" SDCL 23A–31–1. The circuit court merely conformed the sentences received to that of the assurance of the magistrate judge's pretrial statement. The circuit court's subsequent judgment cured the magistrate judge's improper sentencing.

■ We note further that appellants were not denied their Sixth Amendment right to a jury trial by being placed on probation for one year. No jail sentence remains which can be imposed on appellants even in the event that their suspended sentences are revoked. Of that part of the sentence which remained after the circuit court's judgment, not "one day of the defendant's freedom was involved ... but only his pocketbook[.]" *Wikle,* 291 N.W.2d at 795 (Henderson, J., concurring specially). Appellants were not improperly denied a jury trial.

### ISSUE II

WHETHER THE CIRCUIT COURT ERRED WHEN IT AFFIRMED THE MAGISTRATE COURT'S RULING THAT APPELLANTS WERE NOT ENTITLED TO THE DEFENSE OF JUSTIFICATION BY NECESSITY.

■ The defense of necessity is an affirmative defense which requires the de-

---

**4.** In part, SDCL 23–1A–17 recites: "A jury trial may not be granted for petty offenses, but conduct for the trial of a petty offense shall otherwise be governed by the rules of civil proce-

dure." There is no statutory definition of "petty offenses." This court, however, discussed the distinctions between petty and more serious offenses in *Wikle,* 291 N.W.2d 792.

fendant to present credible evidence in its support prior to its submission to the trier of fact. *State v. Rome,* 452 N.W.2d 790 (S.D.1990) (*Rome II*); SDCL 22–1–2(3). Appellants were denied this defense but were allowed to make an extended offer of proof. Appellants assert it was error to be denied this defense. As we have previously discussed, this defense is properly raised

> when the offered evidence, if believed by the jury, would support a finding by them that the offense ... was justified by a reasonable fear of death or bodily harm so imminent or emergent that, according to ordinary standards of intelligence, and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the public injury arising from the offense committed[.]

*State v. Boettcher,* 443 N.W.2d 1, 2 (S.D. 1989) (emphasis omitted) (citing *State v. Miller,* 313 N.W.2d 460, 462 (S.D.1981)).

■■■ The necessity defense is a limited defense which has been expressed in terms of a "choice of evils." *City of St. Louis v. Klocker,* 637 S.W.2d 174, 175 (Mo. Ct.App.1982). While one may argue whether abortion is a moral "evil" or not, it is beyond peradventure that abortion is legal. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Abortion has been a constitutionally protected right in South Dakota since *State v. Munson,* 86 S.D. 663, 201 N.W.2d 123 (1972), was vacated and remanded for further consideration in light of *Roe v. Wade,* by the United States Supreme Court in *Munson v. South Dakota,* 410 U.S. 950, 93 S.Ct. 1416, 35 L.Ed.2d 683 (1973). *See State v. Munson,* 87 S.D. 245, 206 N.W.2d 434 (1973). The abortion procedure is also a lawful activity. As such, appellants were not presented with a choice of evils. They were not engaged in conduct which would have prevented an unlawful force or activity. Rath-

er, they acted unlawfully to prevent the happening of a lawful activity.

A person may not be convicted of a crime based upon conduct in which he engaged because of the use or threatened use of *unlawful* force upon him or upon another person, which force or threatened use thereof a reasonable person in his situation would have been lawfully unable to resist.

SDCL 22–5–1 (emphasis added); *State v. Rome,* 426 N.W.2d 19, 21 (S.D.1988) (*Rome I*). An unlawful activity cannot be used to justify the prevention of a lawful activity. We therefore affirm the ruling which denied appellants the defense of justification by necessity.[5]

Appellants also assert that the magistrate judge erred when he denied their motion for acquittal at the close of the city and the state's case. This assertion is without merit. *State v. Esslinger,* 357 N.W.2d 525, 533 (S.D.1984). The evidence clearly establishes appellants were arrested while in the process of committing the offenses charged.

Affirmed.

WUEST and AMUNDSON, JJ., and HERTZ, Circuit Judge, concur.

HENDERSON, J., concurs in part and dissents in part.

HERTZ, Circuit Judge, sitting for SABERS, J., disqualified.

HENDERSON, Justice (concurring in part; dissenting in part).

"In all criminal prosecutions," the Sixth Amendment of the Constitution of the United States provides, "the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been commit-

---

5. In holding as we do today, we join a long list of jurisdictions which have rejected the defense of justification by necessity to justify illegal activity directed at a locale where the lawful activity of abortion is engaged in. *Cleveland v. Municipality of Anchorage,* 631 P.2d 1073 (Alaska 1981); *Gaetano v. United States,* 406 A.2d 1291 (D.C.1979); *People v. Stiso,* 416 N.E.2d 1209 (Ill.App.Ct.1981); *People v. Krizka,* 92 Ill.App.3d 288, 48 Ill.Dec. 141, 416 N.E.2d 36 (1980); *Sigma Reproductive Health Center v. State,* 297 Md. 660, 467 A.2d 483 (1983); *State v. O'Brien,* 784 S.W.2d 187 (Mo.Ct.App.1989); *City of St. Louis v. Klocker,* 637 S.W.2d 174 (Mo.Ct.App.1982); *People v. Crowley,* 142 Misc.2d 663, 538 N.Y.S.2d 146 (N.Y.Just.Ct.1989); *State v. Sahr,* 470 N.W.2d 185 (N.D.1991); *State v. Clowes,* 310 Or. 686, 801 P.2d 789 (1990).

ted ..." Note that the drafters of the Bill of Rights did *not* write "speedy and public trial *or* an impartial jury." An accused is guaranteed both.

Regardless, the plurality of *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), decided that the speedy trial was more important and that "all criminal proceedings" did not include "petty offenses." A person accused of a crime with a punishment of less than six months is not guaranteed a jury trial by judicial fiat. Finding that the punishment of Bowers, et al., goes beyond six months including the possibility of jail time, I dissent with Issue I.

South Dakota, although not granting a jury trial for every criminal prosecution, supposedly grants more rights to its citizens than *Baldwin*. In *State v. Wikle*, 291 N.W.2d 792 (S.D.1980), this Court held that a defendant in a criminal prosecution is entitled to a jury trial upon demand when charged with any state law or state ordinance *in which a direct penalty of incarceration for any period of time could be imposed.*

Four years later, this Court modified *Wikle*. In *State v. Auen*, 342 N.W.2d 236 (S.D.1984) (a speeding offense), this Court held that a jury request may be denied when a trial court assures the defendant that a jail sentence will not be imposed. SDCL 23–1A–17 specifically denies trial by jury for "petty offenses." Although the meaning and scope of "petty offenses" is not defined, *Wikle* and *Auen* have limited the scope to offenses which carry a maximum jail time of less than six (6) months.

In *Wikle*, I wrote that I voted to affirm the conviction only because no jail time was involved. *Wikle* at 795 (Henderson, J., concurring specially). When this Court handed down *Auen*, I dissented because incarceration was involved. *Auen* at 239 (Henderson, J., dissenting).

In *Wikle*, the defendant appealed from a conviction on a city traffic offense and a state offense of failing to display an automobile inspection sticker on his auto. In the opinion, this Court held that no right to a jury trial existed under the offenses com-

mitted and various similar offenses, "relatively innocuous in character such as violations of traffic laws, sanitation codes, and building codes, [which] can be viewed as merely regulatory rather than criminal in their thrust as long as incarceration is not one of the modes of punishment." *Id.* at 793, 794. This language overruled parts of this Court's decision in *City of Brookings v. Roberts*, 88 S.D. 623, 226 N.W.2d 380 (1975). However, *Wikle* expressly approved (the language was characterized as dicta in *Auen*) of the position espoused in the special concurrences in *Roberts*. *Wikle*, 291 N.W.2d at 794. *These concurrences expressed the rule that in any criminal prosecution, whether for violation of state law or city ordinance, in which direct penalty of incarceration for any period of time could be imposed, the accused would be entitled to trial by jury upon demand. Id.* at 794. In approving this language from the *Roberts* concurrences, the *Wikle* Court aligned itself with the concurring opinion of Justices Black and Douglas in *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970). In a landmark case in this nation, *State v. Opperman*, 247 N.W.2d 673, 674 (S.D. 1976), the South Dakota Supreme Court held:

> There can be no doubt that this court has the power to provide an individual with greater protection under the state constitution than does the United States Supreme Court under the federal constitution.

(Quoting *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975)). In many judicial seminars and conferences, which I have attended in a period of nearly 20 years as a trial judge and appellate justice, *Opperman* has been examined and hailed as an enlightened decision. *See also*, Mr. Justice William J. Brennan, Jr., *State Constitutions and the Protection of Individual Rights*, 90 Harv.L.Rev. 489, 491 (January 1977), wherein he expressed:

> But the point I want to stress here is that state courts cannot rest when they have afforded their citizens the full protections of the federal Constitution.

State constitutions, too, are a font of individual liberties, their protections often extending beyond those required by the Supreme Court's interpretation of federal law. The legal revolution which has brought federal law to the fore must not be allowed to inhibit the independent protective force of state law—for without it, the full realization of our liberties cannot be guaranteed.

Oh, that I, Frank Henderson, your servant, could also be a font. Liberty is a glorious feast for those who eat at the constitutional table.

In the case before us, appellants were charged with disorderly assembly (§ 26-27, Rev.Ord.City of Sioux Falls) and unlawful occupancy of property (SDCL 22-35-6). Whereas both offenses carry a maximum jail time of six months, the magistrate trial judge denied the request for a jury trial:

> I'm not, first of all, going to open up the Pandora's box of giving trials to every Class 2 offense. I have done that in petty theft cases because no one wants to be a thief, but otherwise I'm not going to open up that box ... so the request for a jury trial will be denied.

Attempting to follow *Auen*, the magistrate trial court assured the appellants that they would receive no jail sentence. *Nevertheless, after the trial, the magistrate court imposed suspended sentences, community service, fines and probation. Although the circuit court eliminated the suspended sentences pursuant to SDCL 23A-31-1, the one year probation remained intact.*

Both the magistrate court and circuit court erred in denying appellants a jury trial based upon the crime being a petty offense with no jail time. The first problem is defining "petty." Although the meaning and scope of petty crimes are not statutorily defined, the Court announced a formula in *Wikle* to distinguish the two. Courts must look to the maximum punishment and the nature of the offense, consider the common law background of the offense, determine if society views the offense with sufficient opprobrium, and con-

sider the consequences of conviction. *Wikle* at 794.

Furthermore, *Baldwin does not hold that offenses which carry a maximum punishment of six months or less are automatically petty offenses. Baldwin,* 399 U.S. at 69, 90 S.Ct. at 1888. Rather, when deciding if an offense is "petty," the U.S. Supreme Court seeks out objective criteria reflecting the seriousness with which society regards the offense, and "we have found the most relevant such criteria in the severity of the maximum authorized penalty." *Baldwin* at 68, 90 S.Ct. at 1888. Attempting to heed to that holding, this state broadly defines a "petty crime" as an offense that carries a maximum jail time of six (6) months or less. *Auen* at 237–238. What happened to our "eternal vigilance" here—as commanded by Thomas Jefferson, as being "the price of liberty?"

Under *Baldwin,* we are supposed to be looking at the maximum *penalty,* not simply jail time. Had appellants been charged with the state law version of disorderly assembly, rather than the city version, they would have violated a Class 1 misdemeanor with a maximum incarceration of one (1) year. SDCL 22-10-9, 22-10-11, 22-6-2. Thus, under state law, the court could not deny the appellants their mandatory and constitutionally guaranteed jury trial. Admittedly, these appellants were not charged with the state version. However, the inequity is obvious: Prosecutors can deftly deny a defendant a jury trial by simply charging him with the city version of a crime.

Granted, police and prosecutors may arrest and charge at their own discretion. But in Sioux Falls, a person can be denied a jury trial if the city officials believe the actions are petty, even though the state categorizes the actions as serious or when the judge decides not to "open up the Pandora's box," or when the prosecutor, as he stated during the motion hearing, does not want the appellants to use "the Court system as a forum by which to politicize their beliefs[.]"

Despite the majority's labeling it as such, this protest was anything but petty. Be-

fore the protests began, organizers met with the police in hopes of keeping their assembly peaceful. Anticipating problems, the police, on the other hand, called in 21 off-duty officers, sent 77 officers to the protest, rented buses, brought video cameras, instituted new methods for arresting and identifying arrestees who might not be carrying identification. This was all set up in advance at an expense of nearly $5,000. Police Captain Gerald Kiesacker stated that he had anticipated more violence and more resistance than at previous similar demonstrations. Consider: The press was given its own observation area during the arrests. Petty? Baloney!

This was not a situation where police established a "speed trap" or anticipated a rash of "petty thefts." This was a major operation. Albeit the ordinance violations may label the appellants' actions as less than serious, the police hardly treated these actions as "petty." Rather, law enforcement treated this entire event as being "serious."

*Additionally, placing appellants on a one-year probation without benefit of a jury trial also denied them their Sixth Amendment rights.* After conviction of an offense not punishable by death or life imprisonment, a defendant may be placed on probation. SDCL 23A–27–12. Probation is an alternative to confinement where the defendant is under the control of the trial court in a manner designed to avoid incarceration. *State v. Huftile,* 367 N.W.2d 193, 196 (S.D.1985). Public protection is provided through the ability of the trial court to revoke probation and impose a sentence should the defendant violate the terms of the probation. *State v. Marshall,* 247 N.W.2d 484, 487 (S.D.1976); *State v. Herrlein,* 424 N.W.2d 376 (S.D.1988); SDCL 23A–27–21. Such was done to several co-defendants at the trial level who are not a party to this appeal.

Thus, appellants *were subject to a one-year punishment, a violation of which could subject them to jail time.* Furthermore, though they may not be incarcerated, their actions are still under the disciplinary eye of the trial court. Appellants Dorr and Ellenbecker took jail time in lieu of the fine. In *Wikle,* the special concurrence expressed: "If one day of the defendant's freedom was involved, I would dissent, but only his pocketbook is involved." Here, freedom is involved. Recall students, *Baldwin* said to look at the maximum penalty to define "petty," and held "that a possible six-month *penalty* is short enough to permit classification of the offense as 'petty.'" *Baldwin* at 69, 90 S.Ct. at 1888. Today's holding permits a penalty beyond that six-month boundary.

Probation, in itself, involves the freedom of a defendant. Even under the logic of *Baldwin* and *Auen,* the defendant escapes the grasp of the State within six months. Is not the purpose of the courts to protect, not chisel away, the rights of the accused? These appellants were not provided with a trial by jury, which is their constitutional right in a criminal prosecution of this nature. I declare that the charges in issue before us do not come within the exception to trial by jury in a criminal case which *Auen* provided. It was reversible error for the circuit court to affirm the magistrate court's denial of appellants' request for trial by jury.

When the shadows are cast upon my judicial mantle, I am comforted with the conviction that I stood for jury trials and not against them. As Teddy Roosevelt once expressed: "I shall not join those weak and timid souls who know neither victory nor defeat." I have fought the good fight. Under the Statist's muskets, I have again fallen. So what. "Woe unto you, when all men shall speak well of you!" [Luke 6:26]. And so—it may be said of these appellants.