#25149-rev & rem-DG

**2010 SD 9**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                                        Plaintiff and Appellee,

v.

JACOB LUDEMANN,                                        Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE VINCENT A. FOLEY
Judge
\* \* \* \*

Wm. MARK KRATOCHVIL
Brookings County State's
 Attorney's Office
Brookings, South Dakota
and
MARTY J. JACKLEY
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota                                        Attorneys for plaintiff
                                                                        and appellee.


Donald M. McCarty
McCann, Ribstein & McCarty, P.C.
Brookings, South Dakota                                        Attorneys for defendant
                                                                        and appellant.

\* \* \* \*

ARGUED NOVEMBER 18, 2009

OPINION FILED **02/03/10**

#25149

GILBERTSON, Chief Justice

[¶1.]        Jacob Ludemann was arrested under the citizen's arrest statute SDCL 23A-3-3 by student officers on the campus of South Dakota State University (SDSU) for public urination in violation of a city ordinance.  He was thereafter further detained and questioned by a certified law enforcement officer with the SDSU Police Department (SDSUPD) and eventually charged with driving under the influence in violation of SDCL 32-23-1(1).  Ludemann moved to suppress all evidence obtained alleging the student officers lacked authority to arrest him under the citizen's arrest statute.  Ludemann's motion was denied, and he was convicted of DUI.  We reverse.

## FACTS

[¶2.]        On January 27, 2007, Cody Chambliss and Mark Hanneman, nineteen-year-old students at SDSU, were on campus walking their assigned foot patrol as on-duty student officers with the SDSUPD.  As student officers, Chambliss and Hanneman were under the supervision of the SDSUPD and were wearing SDSUPD uniforms.  They were not certified law enforcement officers.  At 12:50 a.m., Chambliss and Hanneman observed a vehicle pull into a campus parking lot.  The student officers were approximately 100 feet away from the parked vehicle at that time.  Chambliss and Hanneman observed the driver exit the vehicle and stand close to and facing toward the vehicle.  While they could not directly observe his actions from that distance, they testified that it appeared the driver was urinating on the tire of the vehicle as they could hear liquid hitting the ground.  The student officers observed a passenger exit the vehicle, walk a short distance to a light pole,

-1-

lean over, and vomit. The driver and the passenger then began walking toward a dormitory entrance.

[¶3.] Before the driver and passenger entered the dormitory, Chambliss and Hanneman told the driver and passenger to stop by shouting "Stop, SDSU Police." The driver and passenger complied. Hanneman approached the vehicle to verify what he had seen and noted urine next to the car and vomit by the light pole. Chambliss and Hanneman asked the driver to remain with them while they radioed dispatch for a mobile unit. It appeared to the student officers that the driver and passenger wanted to leave and enter the dormitory, but remained with the student officers at their request. Thomas Ascher, a sworn SDSU law enforcement officer arrived on the scene approximately one minute later.

[¶4.] Officer Ascher encountered the driver and the passenger in the company of the student officers just outside a dormitory entrance. Officer Ascher asked Ludemann who owned the vehicle and why he had urinated on its tire. During the conversation, Ludemann admitted to owning the vehicle, urinating in the parking lot, and to driving to the location. Ascher returned to his patrol car and ran a license plate check to verify Ludemann's claim of ownership. After further conversation, Ascher detected a strong odor of alcohol on Ludemann and asked Ludemann to accompany him to his patrol vehicle. After conducting field sobriety tests, Officer Ascher administered a breathalyzer test that resulted in a reading of .104. Officer Ascher placed Ludemann under arrest for driving under the influence, escorted him to a local hospital for a blood draw, and then to the SDSUPD for

booking. Ascher mailed the blood draw to the state laboratory in Pierre, which eventually confirmed a blood alcohol concentration (BAC) of .127 from the sample.

[¶5.] Ludemann moved to suppress all evidence discovered by law enforcement as a result of the stop, detention, and arrest. As the basis for his motion, Ludemann contended that the student officers were without statutory or legal authority to execute the stop, there was no reasonable suspicion or probable cause to support the stop, and in all respects the stop violated Ludemann's constitutional rights.

[¶6.] A hearing was held on the motion to suppress. At that hearing, Hanneman testified he approached Ludemann's car after he noticed what he believed to be the driver urinating in public in violation of a Brookings City Ordinance,[1] and after seeing the passenger vomit. Hanneman testified he stopped and detained Ludemann for public urination and held him until Officer Ascher's arrival. Hanneman further testified the SDSUPD Chief of Police and officers trained and instructed him that as a student officer he had authority to stop and detain individuals not abiding the law until a sworn officer arrived on the scene without regard to the type of offense committed. That same information was contained, according to Hanneman, in his training manual.

[¶7.] Officer Ascher also testified at the suppression hearing. Officer Ascher testified to the facts of his arrival and his initial conversation with Ludemann.

---

1. Brookings City Ordinance Sec. 58-161 provides: "It shall be unlawful for any person to urinate in any public place in the city. For purposes of this section, a public place shall be any public or private property which is not within a building."

Officer Ascher testified that when he arrived on the scene, Ludemann was not free to leave and enter his dormitory.

[¶8.]     Timothy Heaton, Chief of the SDSUPD, testified at the hearing that student officers wore uniforms with patches identifying them as student officers along with a patch indicating their status as members of the SDSUPD. According to Chief Heaton, the students' authority to stop and detain was contained in the department's policy and procedures manual and was approved by the SDSU administration. Chief Heaton further testified student officers were authorized by the SDSUPD to detain any person the student officers witnessed committing a crime under color of authority as officers, regardless of the category of crime witnessed. He further testified only sworn SDSU officers had authority to conduct an arrest.[2]

[¶9.]     The State argued the citizen's arrest statute, SDCL 23A-3-3, provided Chambliss and Hanneman with authority to arrest Ludemann. The State further argued that public urination was more than a petty offense, rendering it an offense

---

2.     On cross-examination, Chief Heaton testified that Chambliss and Hanneman detained Ludemann under color of his authority as the Chief of the SDSUPD. However, the State argued Chambliss and Hanneman detained Ludemann in their roles as citizens rather than as members of the SDSUPD, and appears to have conceded that despite Chief Heaton's testimony to the contrary, student officers could not detain under color of authority of the SDSUPD. The magistrate refused to enter a finding of fact or conclusion of law that the student officers detained Ludemann under color of law. The magistrate also noted from the bench that: "Chief Heaton can't give authority to officers to detain, nor can SDSU, only the legislature can do that."

for which a citizen's arrest could be made.[3]  The State did not argue that the student officers' authority to detain Ludemann was derived from the SDSUPD as suggested by Chief Heaton.

[¶10.]	Ludemann argued at the hearing that his detention by the student officers was a seizure within the meaning of the Fourth Amendment.  He further argued that public urination in violation of the Brookings City Ordinance was a petty offense for which one may not make a citizen's arrest.

[¶11.]	The magistrate court denied Ludemann's motion to suppress from the bench.  Ludemann's motion for reconsideration was also denied.  The magistrate court concluded the student officers' stop of Ludemann was a seizure within the meaning of the Fourth Amendment.  It also concluded the student officers had the same authority as a private person to arrest another for a "public offense" under SDCL 23A-3-3.  The magistrate court further concluded the city ordinance prohibiting public urination and imposing a maximum fine of $200 was not a petty offense, but rather was a "public offense."[4]  It did so after it concluded that the

---

3.	The magistrate court specifically concluded that the student officers' observations "constituted specific and articulable facts which created a reasonable suspicion of a criminal violation"; that "based on such reasonable suspicion . . . [the] student officers had a right to stop [Ludemann]"; and that "the brief detention of [Ludemann] was reasonably justified under the circumstances."  Mem. Decision, Conclusions of Law X, XI and XII.  The magistrate did not specifically reference *Terry v. Ohio*, 392 US 1, 19-22, 88 SCt 1868, 1879-1880, 20 LEd2d 889 (1968), however, it concluded that the stop was valid.  Although the magistrate court ruled on the *Terry* issue, the circuit court did not, and the State has not pursued the issue on appeal.

4.	Brookings City Ordinance Sec. 1-8(c) provides in relevant part:  "Except as otherwise provided by law or ordinance, a person convicted of a violation of this Code shall be punished by a fine of not more than $200."

definition of a "public offense" contained in SDCL 22-1-2(29), which provides: "'Offense' or 'public offense,' any crime, petty offense, violation of a city or county ordinance, or act prohibited by state of federal law[,]" indicated that a petty offense was a public offense and therefore, a citizen could arrest anyone for a "public offense" including any "petty offense." The magistrate court further concluded that a petty offense is one that is prosecuted in the name of the state and has a maximum fine of $20. Finally, it concluded the term "petty offense" as used in South Dakota Codified Law pertained only to the definitions and procedures in SDCL 22-6-7 and Chapter 23-1A. The magistrate concluded a violation of the Brookings City Ordinance against public urination was more than a petty offense because the maximum fine was $200. Based on the student officers' observations of Ludemann urinating in public, it concluded reasonable suspicion existed sufficient for Chambliss and Hanneman to conduct a citizen's arrest. Finally, the magistrate concluded the stop of Ludemann by Chambliss and Hanneman did not violate Ludemann's constitutional rights and it therefore denied Ludemann's motion to suppress. Ludemann appealed the magistrate court's denial of his motion to suppress and the circuit court affirmed.

[¶12.] Ludemann and the State entered into a stipulation and agreement for a court trial on the DUI charge under specified conditions. The parties agreed that in order to avoid a jury trial while simultaneously providing Ludemann with the right to appeal the denial of the suppression motion, Ludemann would waive his right to a jury trial and agree to a court trial. In exchange, the State agreed any sentence would be held in abeyance until completion of the appeal. The parties

further agreed the circuit court would enter a finding based on the evidence submitted on the stipulated record developed at the motion hearing, without the necessity of any further hearing or notice. Finally, the parties agreed Ludemann would have the right to a new trial in the event this Court reversed the magistrate's and circuit court's rulings as to the motion to suppress. After the agreement and stipulation were entered, the magistrate court entered an order and final judgment of conviction finding Ludemann guilty of DUI.

[¶13.]    Ludemann appeals to this Court raising the following issues:

1.    Whether a violation of the Brookings City Ordinance 58-161 prohibiting public urination is a petty offense for which a citizen may arrest under SDCL 23A-3-3, or for which a certified officer may arrest under SDCL 23A-3-2.

2.    Whether student officers may routinely hold themselves out as law enforcement officers for purposes of detaining citizens for violation of the Brookings City Ordinance against public urination and later justify their actions based on the citizen's arrest statute, SDCL 23A-3-3.

Issue 2 was not preserved below as the magistrate and circuit court's findings of fact and conclusions of law did not include any reference to the student officers arresting Ludemann under color of authority.

## STANDARD OF REVIEW

[¶14.]    "This Court reviews the denial of a motion to suppress alleging a violation of a constitutionally protected right as a question of law by applying the de novo standard." State v. Madsen, 2009 SD 5, ¶11, 760 NW2d 370, 374 (quoting State v. Bowker, 2008 SD 61, ¶17, 754 NW2d 56, 62). Under this standard, we review the circuit court's findings of fact under the clearly erroneous standard, but

#25149

we give no deference to its conclusions of law. State v. Haar, 2009 SD 79, ¶12, 772 NW2d 157, 162 (quoting State v. Condon, 2007 SD 124, ¶15, 742 NW2d 861, 866).

## DISCUSSION AND ANALYSIS

[¶15.]        1.        **Whether a violation of the Brookings City Ordinance is a petty offense for which a citizen may arrest under SDCL 23A-3-3 or a certified law enforcement officer may arrest under SDCL 23A-3-2.**

[¶16.]        Ludemann argues Chambliss and Hanneman were without authority to make a citizen's arrest under SDCL 23A-3-3 because a violation of Brookings City Ordinance Sec. 58-161 is a petty offense for which a citizen's arrest is not authorized under the statute. Ludemann further argues his arrest by the student officers was illegal and, therefore, all evidence collected as a result must be suppressed.

[¶17.]        The State argues a violation of Brookings City Ordinance Sec. 58-161 is more than a petty offense because it carries a maximum fine of $200.[5] The State

---

5.        The State argued below and on appeal that the word "petty" has two definitions depending on how the word is used: in regard to whether a defendant had a right to a jury trial or, in the alternative, in regard to whether a citizen can conduct a legal arrest under SDCL 23A-3-3. The State argues the word "petty" in *State v. Wikle*, 291 NW2d 792 (SD 1980), is used as an adjective to denote the level, but not the category of an offense, for which the right to a jury trial exists. In contrast, the State argues "petty," as used in the term "petty offense" in SDCL 22-1-2(29) is a noun intended to define a category of offense that rises to the level of a public offense, which includes petty offenses. The State then uses the definition of a public offense from SDCL 22-1-2(29) when considering the language of SDCL 23A-3-3, arguing that a citizen is permitted to arrest someone who commits any public offense, including any "petty offense." SDCL 22-1-2(29) provides: "'Offense' or 'public offense,' any crime, petty offense, violation of a city or county ordinance, or act prohibited by state or federal law."

(continued . . .)

-8-

further argues that nothing prohibits a student officer from exercising his rights as an ordinary citizen to conduct a citizen's arrest under SDCL 23A-3-3, even while on duty as a student officer.

[¶18.]     "Under the doctrine of *Wong Sun v. United States,* 371 US 471, 83 SCt 407, 9 LEd2d 441 (1963), the exclusionary rule generally makes inadmissible against the defendant evidence that is the product of an unconstitutional arrest." State v. Spotted Horse, 462 NW2d 463, 468-69 (SD 1990). The exclusionary rule serves to "make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person." *Id.* Once the exclusionary rule is triggered, "indirect as well as direct evidence; physical tangible materials obtained either during or as a direct result of an unlawful invasion, come at by exploitation of the illegal search; and testimony of matters observed during an unlawful invasion" are excluded. *Id.* at 469.

[¶19.]     SDCL 23A-3-3 provides:

Any person may arrest another:

---

(. . . continued)

We agree that there appear to be two definitions depending on whether the word is used with regard to when the right to a jury trial exists, or in reference to what constitutes an offense. However, the definition in SDCL 22-1-2(29) does not control when a citizen's arrest may be made under SDCL 23A-3-3. The Fourth Amendment safeguards provided against illegal arrest are of constitutional magnitude, on par with the protections provided a defendant's Sixth Amendment right to a trial for criminal offenses. In both instances, constitutional rights are at stake. The protection of a defendant's Fourth and Fifth Amendment rights require us to apply constitutional law principles rather than statutory rules of construction dealing with context and usage.

> (1) For a public offense, *other than a petty offense*, committed or attempted in his presence; or
>
> (2) For a felony which has been in fact committed although not in his presence, if he has probable cause to believe the person to be arrested committed it.

(Emphasis added). SDCL 22-1-2(29) defines "public offense" as "any crime, petty offense, violation of a city or county ordinance, or act prohibited by state or federal law." South Dakota Codified Law does not define what types of offenses are petty versus serious other than to provide that there is no right to a jury trial for a petty offense. State v. Bowers, 498 NW2d 202, 205 n4 (SD 1993) (quoting SDCL 23-1A-17); State v. Wikle, 291 NW2d 792 (SD 1980)). However, SDCL 23-1A-17 provides in relevant part: "A jury trial may not be granted for petty offenses, but conduct for the trial of a petty offense shall otherwise be governed by the rules of civil procedure."

[¶20.] In determining whether a violation of a particular city ordinance is a petty offense for which no right to a jury trial exists, this Court has adopted the United States Supreme Court's approach from *Duncan v. Louisiana*, 391 US 145, 88 SCt 1444, 20 LEd2d 491 (1968)). *Wikle*, 291 NW2d at 794. Rather than pronouncing a precise line of demarcation between serious and petty offenses, *Duncan* focused on the fact that "so-called petty" offenses were tried without a jury in England and the Colonies and have traditionally been exempt from the Sixth Amendment right to a jury trial. *Duncan*, 391 US at 160, 88 SCt at 1453, 20 LEd2d 491. It then held the penalty authorized for the particular offense is of major relevance in determining whether a crime is serious or petty. *Id.* at 160-61, 88 SCt at 1453. We adopted a similar test wherein we consider the "maximum punishment

. . . and the nature of the offense, and consider its common law background . . . , whether society views the offense with sufficient opprobrium, and the consequences of conviction." *Wikle*, 291 NW2d at 794.

[¶21.]    Generally, if the defendant is subject to jail time under the ordinance in question, an offense is not petty within the meaning of our case law and the right to jury trial exists. *Bowers*, 498 NW2d at 204. An exception exists when the trial court assures the defendant that despite the provision for a maximum jail sentence of less than six months it intends not to impose any jail sentence; in that event, no right to a jury trial exists. *Id.* at 204-5.

[¶22.]    With regard to fines and what dollar threshold must be met or exceeded in order for an offense to constitute something more than a petty status, this Court has previously stated that a maximum fine of $20 was sufficient based on the 1887 Dakota Territorial Code. City of Brookings v. Roberts, 88 SD 623, 226 NW2d 380, 383 (1975). However, the $20 threshold was overruled in 1980 in *Wikle,* 291 NW2d at 794. The *Wikle* Court held that the violation of a city traffic ordinance for which a $100 maximum fine and no jail time was imposed was a petty offense and no jury trial was available. *Id.* It did so after concluding that in comparison to the $500 maximum fine for a federal petty offense in 1980 under 18 USC § 1(3) (repealed by Pub. L. 98-473), the $100 fine imposed in *Wikle* was relatively insignificant and indicative of a petty offense. *Id.*

[¶23.]    In the instant case, violation of Brookings City Ordinance Sec. 58-161 against public urination carries with it a maximum penalty of a fine of not more than $200. Brookings City Ordinance Sec. 1-8(c). No jail sentence is authorized.

*Id.* The nature of the offense, while potentially indecent, *United States v. Osife*, 398 F3d 1143, 1146 (9thCir 2005), constituting public indecency or disorderly conduct, *DeClue v. Central Illinois Light Co.*, 223 F3d 434, 438 (7thCir 2000) (J. Rovner dissenting in part), anti-social conduct, *Jones v. City of Los Angeles*, 444 F3d 1118, 1132 (9thCir 2006), or a public nuisance, *Leonardson v. City of East Lansing*, 896 F2d 190, 192 (6thCir 1990), does not have sufficient opprobrium[6] to justify its categorization as a serious offense. Furthermore, this Court found no cases in which an individual was prosecuted at common law for public urination. Instead, the prohibition on public urination tends to be based almost exclusively on municipal codes and ordinances. *See* United States v. Powell, 483 F3d 836, 839 (DCCir 2007) (noting public urination in violation of District of Columbia city ordinance DC Code 22-1321); Gullick v. Ott, 517 FSupp2d 1063, 1067 (WD Wis 2007) (noting Columbus, Wisconsin, city ordinance against public urination); United States v. Wehrle, 2007 WL 521882, *4, (SDGa 2007) (noting Savannah, Georgia, city ordinance forbids public urination as does Georgia's public indecency statute O.C.G.A. § 16-6-8).

[¶24.]     Even if greater weight were given to the dollar value of the fine in our analysis, we would still conclude that the maximum fine of $200 classifies public urination in violation of the Brookings' ordinance as a petty offense. The fine of $200 in 2007, the year of Ludemann's offense, is minimal when compared to the

---

6.    Opprobrium is defined as "disgrace arising from exceedingly shameful conduct," or "a cause of shame or disgrace." The American Heritage College Dictionary 958 (3rd ed 1997).

maximum fine under the current federal code, as amended in 1987, for a petty offense. Under 18 USC § 19, a petty offense is defined as "a Class B misdemeanor, a Class C misdemeanor, or an infraction, for which the maximum fine is no greater than the amount set forth for such an offense in section 3571(b)(6) or (7) in the case of an individual[.]" The maximum fine that may be imposed against a person for a Class B or C misdemeanor under 18 USC § 3571(b)(6) is no more than $5,000, and for an infraction under § 3571(b)(7) it is also no more than $5,000. By comparison, the $200 maximum fine for violation of the Brookings City Ordinance at issue in this case is even less significant when compared to the current federal maximum petty offense fine of $5,000 than was the relationship between the $100 maximum fine in *Wikle* to the 1980 federal maximum petty offense fine of $500.

[¶25.] The offense of public urination as codified by the Brookings City Ordinance does not constitute anything other than a petty offense. Therefore, student officers Chambliss and Hanneman were without any statutory authority to make a citizen's arrest of Ludemann under SDCL 23A-3-3. What they witnessed, public urination, was a mere petty offense for which they had no authority to arrest. Lacking any authority under which to detain Ludemann, his brief detention by Chambliss and Hanneman under the citizen's arrest statute was an illegal arrest under the circumstances.

[¶26.] As for the authority of Officer Asher to make an arrest, "[w]hether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." Michigan v. DeFillippo, 443 US 31, 36, 99 SCt 2627, 2631, 61 LEd2d 343 (1979) (citing Ker v. California, 374 US 23, 37, 83 SCt 1623, 1631, 10 LEd2d

726 (1963); Johnson v. United States, 333 US 10, 15, and n5, 68 SCt 367, 370, and n5, 92 LEd 436 (1948)).  SDCL 23A-3-2 provides:

> A law enforcement officer may, without a warrant, arrest a person:
>
> (1)    For a public offense, other than a petty offense, committed or attempted in his presence; or
>
> (2)    Upon probable cause that a felony or Class 1 misdemeanor has been committed and the person arrested committed it, although not in the officer's presence.

[¶27.]    Officer Ascher as a certified law enforcement officer had limits on his authority to arrest Ludemann without a warrant pursuant to SDCL 23A-3-2.  Those limits precluded him from arresting Ludemann for the petty offense of public urination.  Therefore, Officer Ascher was also without authority to arrest Ludemann when he arrived on the scene.

[¶28.]    The magistrate court erred when it concluded as a matter of law that the offense of public urination as contained in the Brookings City Ordinance was something more than a petty offense.  It also erred when it concluded as a matter of law that the student officers had authority under the citizen's arrest statute to detain Ludemann for violation of the Brookings' City Ordinance against public urination.  The circuit court also erred when it affirmed the magistrate's ruling that a violation of the Brookings City Ordinance was something more than a petty offense.  Ludemann's arrest was without authority and was illegal under the circumstances.  Therefore, all evidence seized incident to that illegal arrest should have been suppressed.  Reversed and remanded for further proceedings consistent with this opinion.

#25149

[¶29.] KONENKAMP, ZINTER, MEIERHENRY, and SEVERSON, Justices, concur.